# HENRY J. SAUNDERS v. HARRY H. COWL AND OTHERS.[1]

January 7, 1938.

No. 31,551.

*S. J. Kroman* and *Walter J. Welch,* for appellant.
*Hursh & Johnson* and *Homer R. Kinney,* for respondent.

PETERSON, JUSTICE.

Plaintiff sues to recover accrued instalments due under a contract for purchase of a tent sold and delivered by him to defendant, for damage to a piece of tent loaned by him to defendant, and for the agreed price of certain poles sold by plaintiff to defendant. Defendant defends and counterclaims on the ground of breach of ex-

[1]Reported in 277 N. W. 12.

press and implied warranties and fraud inducing the sale of the tent, and appeals from an order denying his motion for new trial after findings of fact and conclusions of law in favor of plaintiff.

The tent was very large, being 180 feet long and 177 feet wide, the center poles of which were approximately 38 feet high. Defendant went to plaintiff's store three or four times during the negotiations for the purchase of the tent. There is a dispute as to what was said and done on these visits. Defendant claims that plaintiff told him that the tent was about six or seven years old; that it was in good condition; that if defendant would spend about $100 in applying a preparation on the canvas it would stand any storm and could be used indefinitely; that defendant made a partial examination of the tent; that he did not know anything about canvas and so advised the plaintiff; and that he told plaintiff that he relied entirely upon his representations. Plaintiff denies that he made any statement as to the age or quality of the tent and states that he rolled the tent out on the floor of his store so defendant could examine it; that defendant examined it and said it was all right. Then the parties signed a contract drawn at a lawyer's office. The contract was a conditional sales contract, reserving title in plaintiff until the purchase price, payable in instalments, had been paid. It provided: "All of said tent being second-hand except one of said middle pieces, and all to be in good condition on delivery." Defendant paid $511.63 down at the time of signing the contract. Shortly thereafter plaintiff delivered the tent to defendant, who attempted to raise it, found that the canvas was rotten and deteriorated, then took the tent to plaintiff and tendered a return of it to him, which plaintiff refused. Defendant served notice of rescission upon plaintiff. Defendant's counterclaim is maintained as an action by the buyer to rescind for breach of warranty by the seller. Uniform sales act, § 69(1)(d), 2 Mason Minn. St. 1927, § 8443(1)(d). See Shimel v. Williams Oven Mfg. Co. 93 Misc. 174, 156 N. Y. S. 1060.

■ Plaintiff contends that the provision of the contract that the tent was to be "in good condition" was not a warranty but only

an expression of opinion by way of puffing and sales talk. The uniform sales act, § 12, 2 Mason Minn. St. 1927, § 8387, provides:

"Any affirmation of fact or any promise by the seller relating to the goods is an express warranty if the natural tendency of such affirmation or promise is to induce the buyer to purchase the goods and if the buyer purchases the goods relying thereon. No affirmation of the value of the goods, nor any statement purporting to be a statement of the seller's opinion only shall be construed as a warranty."

The act distinguishes between affirmations of fact and promises on the one hand and affirmations of value and statements purporting to be the seller's opinion on the other. It is not easy to draw the line accurately between affirmations of fact and statements of opinion. In 1 Williston, Sales (2 ed.) § 202, it is said that "any statement may be put in the form of a statement of opinion." The distinction between statements of fact and expressions of opinion "involves a discrimination between expressions which gradually shade from one to the other." A statement positively made in such a way as to be part of the inducement of a sale is a warranty. 1 Williston, Sales (2 ed.) § 203; 24 R. C. L. pp. 169, 170, §§ 442, 443.

The provision of the contract "in good condition" relates to the quality of the goods. The act defines quality in terms of condition of the goods. In § 76(1) of the uniform sales act, 2 Mason Minn. St. 1927, § 8450(1), quality is defined as follows: " 'Quality of goods' includes their state or condition." The word "good" itself, when used in connection with chattels, refers to their condition— that they are sound, reliable, right, and not depreciated and the like. Webster's New International Dictionary (2 ed.) 1937. In our decisions, prior to and after the adoption of the uniform sales act, quality and condition have been regarded as relating to the same thing and as being the subject of warranty. In Pemberton v. Dean, 88 Minn. 60, 63, 92 N. W. 478, 479, 60 L. R. A. 311, 97 A. S. R. 503, decided in 1902, a warranty is defined as follows:

"A warranty consists in representations and statements of and concerning the *condition* and *quality* of personal property, the sub-

ject of sale, made by the person making the sale to induce and bring it about."

In Skoog v. Mayer Bros. Co. 122 Minn. 209, 212, 142 N. W. 193, 194, decided in 1913, it was held that it is not necessary to use the word "warranty" or its precise equivalent but that "it is enough if the vendor definitely undertakes that the thing sold shall be of a certain kind or quality." We adopted the uniform sales act in 1917. In Dodson Fruit Co. v. Galanter, 145 Minn. 319, 321, 177 N. W. 362, the expression "poor condition" was used in antithesis to soundness to indicate that the quality of the goods was not as warranted. In Hansen v. Gaar, Scott & Co. 63 Minn. 94, 65 N. W. 254, a provision in a written contract that machinery was made of "good materials" and under proper care and management would do good work was held to be a warranty of quality and capacity. In McGrath v. Cunningham Merc. Co. 163 Minn. 416, 204 N. W. 322, an agreement that pulpwood was "good and sound" was held to be a warranty of quality. Where it appears that the word "good" is used to designate the quality, kind, or condition of goods sold, it is an affirmation of fact or promise, as the case may be, and not the mere expression of opinion. Northern Supply Co. v. Wangard, 123 Wis. 1, 100 N. W. 1066, 107 A. S. R. 984 ("good" potatoes held to refer to the quality and condition of the potatoes); Polhemus v. Heiman, 50 Cal. 438; Brown v. Bigelow, 10 Allen, 242; Crescent Cotton Oil Co. v. Union Gin & Lbr. Co. 138 Tenn. 58, 195 S. W. 770; Boskowitz v. Baker, 74 Ill. 264.

Some cases, like Keenan v. Cherry & Webb, 47 R. I. 125, 131 A. 309, relied upon by plaintiff, hold that when the word "good" is used alone, as, for example, a "good coat," that it does not amount to a warranty. But all the cases hold that where the word is used to assert the quality and character of the goods in the particular situation it constitutes an affirmation of fact relating to the goods sold. 55 C. J. p. 690, § 690, note 57a. And it makes no difference whether the word "good" is used alone, Northern Supply Co. v. Wangard, 123 Wis. 1, 100 N. W. 1066, 107 A. S. R. 984, or whether it be used in conjunction with other words. Crescent Cotton Oil

Co. v. Union Gin & Lbr. Co. 138 Tenn. 58, 195 S. W. 770; J. B. Colt Co. v. Newgard, 171 Minn. 211, 213 N. W. 902. See note to § 203, 1 Williston, Sales (2 ed.). Where the parties, after negotiations, have reduced the contract of sale to writing, a statement of the quality of the goods to be sold is to be considered not as a mere matter of description or opinion of the seller, but as the "averment of a material fact, of which he [the seller] has taken to himself the knowledge and the existence of which he warrants." Osgood v. Lewis, 2 Harris & Gill, 495, 522, 18 Am. D. 317. Such a provision in a contract of sale is a promise, not an expression of opinion, within the meaning of the statute. In Orange Crush Co. v. Stacy-Merrill Fruit Co. 156 Minn. 436, 195 N. W. 147, it was held that it is idle to claim that affirmations of fact in a written contract as to the quality of goods sold are trade talk and no warranty.

■ It is contended that there is no warranty because defendant did not rely upon any representation or affirmation made to him by plaintiff concerning the tent, and that he inspected the tent and ascertained for himself that it was all right. The buyer may rely on the affirmation of the seller rather than his own inspection where, as here, the inspection fails to reveal to him defects, either because of their being latent and concealed or because of the buyer's inability to perceive and appreciate the defects from such inspection. Crescent Cotton Oil Co. v. Union Gin & Lbr. Co. 138 Tenn. 58, 195 S. W. 770; Foote v. Wilson, 104 Kan. 191, 178 P. 430; Woods v. Thompson, 114 Mo. App. 38, 88 S. W. 1126; Menihan Co. v. Lipschitz Barack Shoe Co. (Mo. App.) 206 S. W. 232; 1 Williston, Sales (2 ed.) § 208. He may rely both on his inspection and on the seller's warranty. 1 Williston, Sales (2 ed.) § 208. He may rely on the seller's contract of warranty as protection against defects even though he has made some inspection. The question of patent defects in the tent is not in the case. There is no testimony that the defects were patent. Defendant's evidence, which is not contradicted, is that he did not understand canvas; that the examination did not disclose to him the condition of the tent; and that an examination such as defendant made would not disclose deterioration and loss of tensile strength of the fabric due to its age.

The warranty in this case was a provision of the contract of sale. Plaintiff paid down $511.63 at the time the contract was executed. Where, as here, after negotiations the parties reduce their contract to writing and the warranty is made one of its terms and thus a part of the consideration of the purchase price, it will be presumed that the buyer relied on the warranty when he purchased the goods. J. I. Case Threshing-Machine Co. v. McKinnon, 82 Minn. 75, 84 N. W. 646; Orange Crush Co. v. Stacy-Merrill Fruit Co. 156 Minn. 436, 195 N. W. 147; 55 C. J. § 692, p. 696, note 8, p. 697, notes 24 and 25. In Whitehead & Atherton Machine Co. v. Ryder, 139 Mass. 366, 370, 31 N. E. 736, 737, Mr. Justice Holmes stated the applicable rule:

"But when the contract is reduced to writing, the question whether certain expressions constitute a warranty is a matter of construction, and does not depend upon the representation or promise which they embody having afforded a preliminary inducement to entering into the contract. Every expression, which by construction is a term of one party's undertaking, is presumed to be relied on by the other when he makes the contract."

To same effect, Osgood v. Lewis, 2 Harris & Gill, 495, 18 Am. D. 317.

■ There was a breach of warranty. The tent was so deteriorated and rotten that when defendant attempted to raise it it tore to pieces. After making several attempts to raise it, it was found that it could not be done, and defendant had to procure another tent. The only evidence to the contrary is the statement of plaintiff that the tent was up when he was out at the place where the tent was. But this statement is overcome by the testimony of witnesses that when plaintiff was assisting in erecting the tent it tore and could not be erected and that plaintiff said: "Well, I can't do nothing about it." None of this testimony was denied. Plaintiff did not offer any evidence as to the condition of the tent. Even if we were to accept as true the improbable testimony of plaintiff that a canvas tent would not deteriorate any in storage over 50 years, the fact still remains that if his testimony was true, the tent must have been deteriorated and rotten when he put it in storage

because it is uncontradicted that it was deteriorated and rotten when he delivered it to defendant. The positive testimony of witnesses that the tent was rotten and deteriorated must be accepted in this situation.

■ Defendant tendered the tent back to plaintiff. He sent the tent to plaintiff's place of business, and plaintiff refused to receive it. Defendant also served on plaintiff a written notice of rescission upon the grounds of breach of warranty. A buyer may rescind a sale for breach of warranty by the seller. Uniform sales act, § 69(1) (d), 2 Mason Minn. St. 1927, § 8443(1) (d) ; Orange Crush Co. v. Stacy-Merrill Fruit Co. 156 Minn. 436, 195 N. W. 147.

Since there must be a reversal, the other assignments of error are not considered.

Reversed and new trial granted.