SCHWARTZ, APPELLEE, *v.* GROSS ET AL., APPELLANTS.

(No. 4313—Decided December 10, 1952.)

*Mr. J. Edward Schenz,* for appellee.
*Messrs. Holub & Holub,* for appellant.

DOYLE, J.  Robert Schwartz instituted an action in the Municipal Court of Akron, in which he asserted that Emil C. and Rose K. Gross (husband and wife) expressly warranted that a grand piano which they sold to him ''was in good condition and had an excellent tone, and the plaintiff was induced to purchase said piano upon said representation.''  The plaintiff further claimed that, at and before the sale, the piano was not in good condition, ''by reason of it having a split in the sound bridge and a dry pin block, which prevented it from keeping in tune''; that the defects were not discovered until the elapse of about six months; that the plaintiff has rescinded the sale and offered to return the instrument; and that, because of the breach of warranty, damage has accrued in the amount of $375—the amount paid for the piano.

The defendants denied a warranty, and, among other things, alleged ''that the plaintiff was given an opportunity to and did fully and completely examine the * * * piano at the time he took possession, and that said piano was in good condition at that time.''  They prayed for judgment in their favor.

Under the issues so joined, the trial judge, without the intervention of a jury, entered judgment for the plaintiff in the amount requested.  This judgment is the final order from which the appeal has been taken.

We are asked to reverse the judgment and enter final judgment for the defendants below, the appellants here.

Error is assigned in the following respects:

"1. In * * * finding that the advertisement in the Akron Beacon Journal, stating that the piano was in 'good condition' was a warranty on which the plaintiff could rely.

"2. In finding that there was a breach of warranty.

"3. In finding that there is an implied warranty in the sale of secondhand goods.

"4. In finding that plaintiff attempted to rescind the sale within a reasonable time."

At the outset of our consideration of the case, the motion of the appellee to "strike" the bill of exceptions from the record must be sustained. It was not filed in the trial court within the time limitation. Under such circumstances, this court is incapacitated "to consider the contents * * * for any purpose." *Jarboe* v. *Workingmen's Overall Supply Co.*, 60 Ohio App., 540, 22 N. E. (2d), 416; 2 Ohio Jurisprudence (Part 1), Appellate Review, Section 374.

There has been, however, entered of record, findings of fact and conclusions of law made by the trial court pursuant to the provisions of Section 11421-2, General Code. The facts so found to exist are therefore brought upon the record, and this court is under duty to consider them notwithstanding there is no bill of exceptions. 2 Ohio Jurisprudence (Part 1), Appellate Review, Section 294, and cases therein cited.

The findings and conclusions appear as follows:

"Conclusions of Fact

"This cause now coming on for hearing and a jury being by the parties in open court waived, was submitted on the pleadings and evidence.

"The court on the request of the defendants that its conclusions of fact be stated separately from its con-

clusions of law, finds as its conclusions of fact that on May 7, 1950, the defendants, who were the owners of a Schumann grand piano, caused to be published in the Akron Beacon Journal an advertisement which read as follows:

'Baby Grand Piano, good condition, excellent tone. Call Un. 7044 after 6 p. m.'

''That the plaintiff, after reading the advertisement, looked at the piano at the defendant's home; that on July 5, 1950, the plaintiff agreed to purchase the instrument for $375 and a payment of $25 was made; that on July 10, 1950, the balance of purchase price was paid and the plaintiff caused the piano to be delivered at his home at 551 Palisades Drive, Akron, Ohio, which was a newly-built home, but was not yet carpeted; that the piano was out of tune; that he did not have the piano tuned because the carpet had not yet been laid in the new home. The carpeting was completed on or about November 1, 1950, and as soon as the carpet was laid, the plaintiff undertook to have the piano tuned; that the tuner was unable to come to the plaintiff's home until in December, 1950, and upon examination of the instrument, found that tuning would not hold because the pinblock had dried out. The tuner applied fluid treatment and returned on January 12, 1951, for tuning and then found that the pinblock had not responded to the fluid treatment and also found that the treble-string bridge was cracked about ¼ of an inch; that the split was more than one year old; that the piano was entirely unfit for use without being repaired; that it will cost about $400 to repair the piano; that on or about February 17, 1951, plaintiff offered to return the piano and demanded return of his down payment; that down payment was not returned to plaintiff; that plaintiff still has possession of the piano; that the defendants represented the piano to be in good condition except it needed tuning; that the

plaintiff knew nothing about pianos, and that an examination by the plaintiff would not have revealed the existing defects. The court further finds that, prior to the sale of this piano, it was represented and warranted by the defendants to the plaintiff that the piano 'is in good condition'; that in truth and fact the piano was not in good condition but it had a ¼ of an inch crack in the treble-string bridge and that the block had dried out; that it would cost about $400 to repair piano; that such representations and warranty made by the defendants to the plaintiff were false; that the plaintiff was justified in relying upon such representations and warranty, and that by reason of such reliance upon said representations and warranty the sale was made.''

''Conclusions of Law

''The purchaser of the used piano, relying upon representations of the seller that the piano 'is in good condition' is entitled to rescind the sale and recover the full amount of the purchase price and return the piano to the seller when the piano was found to have a dried pinblock and a ¼-inch crack in the treble-string bridge.

''A party selling articles for a specific purpose implies and warrants that they are fit for that purpose and the failure of such warranty is ground for rescission of a contract based upon it.

''Upon breach of warranty, the buyer may at his election rescind the contract, then return or offer to return the goods and recover the price or any part thereof which has been paid, but notice must be given within a reasonable time of the election to rescind.

''Notice by the buyer was made within a reasonable time where the contract was entered into on July 10, 1950, and a notice of election to rescind was made on February 17, 1951, where the evidence shows that the buyer, because of not having carpet in his new home

and because of delay in getting a piano repair man, was unable to discover the existing defects and where the buyer made a reasonable effort to ascertain the defects.''

Discussion will not be made of the common-law rules relative to warranties of quality, condition or fitness in the sale of secondhand articles, because the statutes of Ohio in the language of the Uniform Sales Code are applicable to such sales. See: 151 A. L. R., 446, annotation; *Meyer v. Packard Cleveland Motor Co.,* 106 Ohio St., 328, 140 N. E., 118, 28 A. L. R., 986.

In looking to the statutes, we find Section 8392, General Code, which provides:

''Express warranty. Any affirmation of fact or any promise by the seller relating to the goods is an express warranty if the natural tendency of such affirmation or promise is to induce the buyer to purchase the goods, and if the buyer purchases the goods relying thereon. No affirmation of the value of the goods, nor any statement purporting to be a statement of the seller's opinion only shall be construed as a warranty.''

The first ''conclusion of law'' set forth above indicates that the court found that the language of the advertisement in the newspaper was an express warranty, and that it induced the sale. Ergo, the court determined that the language constituted an ''affirmation of fact'' and was not ''a statement of the seller's opinion'' under the terms of the statute. To this question, we now direct our attention.

The distinction between what are statements of fact and what are expressions of opinion involves a discrimination, as pointed out by Professor Samuel Williston, between expressions which gradually shade from one to the other. 21 Harvard Law Review, 555. The statements that a horse is sound or that an article is in good condition, and other similar state-

ments, have been a prolific source of controversy over the generations. While many of the older cases held that such statements might be a matter of opinion, the cases in recent years, in a majority of instances, have held that such statements, positively made in such a way as to form a part of the inducement of a sale, are warranties, or at least that they present questions of fact for a jury to decide. In many of the cases, nothing is said about the seller's intention. In other cases, it is stated: "Any affirmation made at the time of sale as to the quality or condition of the thing sold will be treated as a warranty if it was so intended." *Polhemus* v. *Heiman,* 45 Cal., 573, 578. In *McLennan* v. *Ohmen,* 75 Cal., 558, 17 P., 687, the court, after stating the foregoing rule, said (at p. 561): "* * * whether it was so intended, and the purchaser acted upon it, are questions of fact for the jury." It appears that, under the Sales Code of this state, the question of intention is not of controlling importance. See: 35 Ohio Jurisprudence, Sales, Section 130, and cases therein cited.

With this background, we again look to the Code and find Section 8456 (definitions of words and phrases), where it is stated: " 'Quality of goods' includes their state or condition."

The newspaper advertisement may reasonably be determined to relate to the quality of the piano, which, by statute, included its "state or condition." When the word "good" is used to describe the "quality" or "condition" of a chattel, it may be found to be an affirmation of fact that the chattel is sound, reliable and right, as opposed to the characterization "poor condition." *Saunders* v. *Cowl,* 201 Minn., 574, 277 N. W., 12, 13-14.

The Supreme Court of Minnesota in the above cited case (*Saunders* v. *Cowl*), when treating the question of the express warranty of a tent, said:

"1. Provision in written contract that goods are to be in good condition when delivered is a warranty of quality.

"2. Where a buyer examined goods prior to contract of sale and the examination did not disclose the particular defects later complained of, it will be presumed that the buyer relied on a written warranty in the contract of sale."

In the case before us, we hold the law to be that quality and condition relate to the same thing, and may be the subject of express warranty; and when representations and statements of and concerning the quality and condition of chattel property, the subject of a sale, are made, a representation that the chattel is "in good condition" may be reasonably found to be an affirmation of fact and an express warranty. In other words, it may be found to be an affirmation that the chattel has in adequate degree those properties which a thing of the kind ought to have.

We are of the opinion that the finding by the trial court on the question of express warranty is not contrary to law. Whether it is against the weight of the evidence, under the circumstances extant, we are unable to determine, because of our incapacity to look to the bill of exceptions.

It is stated by the defendant that the plaintiff did not rely on the newspaper representation, but that he inspected the chattel and ascertained for himself its condition. The finding of fact is that "the plaintiff knew nothing about pianos, and that an examination by the plaintiff would not have revealed the existing defects." (In this review, we must accept this finding as true.) The rule applicable to this situation is stated as follows: "The buyer may rely on the affirmation of the seller rather than his own inspection where * * * the inspection fails to reveal to him defects, either because of their being latent and concealed or because of

the buyer's inability to perceive and appreciate the defects from such inspection." *Saunders* v. *Cowl, supra.* And see: 1 Williston on Sales (Revised Ed.), Section 208; *Crescent Cotton Oil Co.* v. *Union Gin & Lumber Co.,* 138 Tenn., 58, 195 S. W., 770; *Woods* v. *Thompson,* 114 Mo. App., 38, 88 S. W., 1126; *Foote* v. *Wilson,* 104 Kan., 191, 178 P., 430.

It is our conclusion that the judgment of the trial court comes within the bounds of the findings of fact— viz., a breach of an express warranty, a rescission of the contract within a reasonable time, and damages.

Whether the facts found to exist justify the judgment on the theory of an implied warranty, we do not decide. We find it unnecessary, in affirming the judgment on the theory of a breach of an express warranty, to determine whether the facts found to exist could form the basis of a breach of an implied warranty under the provisions of Section 8395, General Code.

*Judgment affirmed.*

HUNSICKER, P. J., and STEVENS, J., concur.