No. 17,650.

LLOYD K. RUDD *v*. ROBERT B. ROGERSON.

(297 P. [2d] 533)

Decided May 21, 1956.

Mr. WILLIAM E. DOYLE, for plaintiff in error.

Mr. ALBERT P. FISCHER, Mr. FORREST S. BLUNK, for defendant in error.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the Court.

PLAINTIFF in error, plaintiff in the trial court and hereinafter called plaintiff or Rudd, seeks review by writ of

error of the judgment entered by the district court dismissing his complaint for insufficiency of evidence to support the same. He also seeks review of the judgment entered by the trial court in favor of defendant Rogerson on Rogerson's counterclaim. Rudd's action is for rescission of a contract between him and defendant Rogerson by the terms of which plaintiff purchased from defendant a herd of cattle which was represented to be, and sold as, registered Aberdeen Angus.

August 17, 1953, a written contract was entered into between Rudd and Rogerson which provided for the sale by Rogerson to Rudd of eighty-five registered Aberdeen Angus cows with calves and four registered bulls for the total sum of $26,700.00 Exhibit P is the bill of sale executed by Rogerson August 27, 1953, and it purports to sell eighty-two registered cows, three unregistered cows, and four registered bulls. This exhibit specifically identifies the registered cows by name and registration number, and lists the heifer and bull calves as registerable, giving their tattoo numbers. The cattle were delivered to plaintiff October 9, 1953.

In substance the complaint alleges that defendant Rogerson, with knowledge of Rudd's interest in purchasing Aberdeen Angus cattle for breeding purposes, represented to him that he was in the business of raising and selling registered Aberdeen Angus cattle and that his cattle either were registered, or eligible for registration, and were of good quality; that in reliance on said representations plaintiff executed an agreement with defendant on August 17, 1953, to purchase eighty-five registered cows with calves and four registered bulls for the sum of $26,700.00; that thereafter, by bill of sale executed August 27, 1953, defendant itemized certain allegedly registered Aberdeen Angus cattle and certain calves warranted as eligible for registration as the offspring of the cows listed. October 9, 1953, certain cattle were delivered to plaintiff in conformance with the contract, and at that time plaintiff paid delivery charges in the

amount of $583.40. Upon inspection of the cattle, plaintiff rejected them for breach of express and implied warranties on the grounds that:

a. Certain of the animals so delivered were not the animals itemized in the bill of sale;

b. Certain of the animals warranted as registered or eligible for registery were not, in fact, eligible for registration under the rules of the American Aberdeen Angus Breeder's Association.

An itemized list of the many breaches of warranties are described in Exhibit C attached to the amended complaint.

It further is alleged, that by reason of the violations of the warranties and representations, plaintiff was unable to breed or market the cattle as registered cattle and because of this he rescinded the contract on November 19, 1953, by sending a notice to defendant, and that, during the period that he had possession of the cattle, he spent the sum of $6,997.00 for the reasonable and proper care of said animals. Plaintiff prayed for rescission of the contract; for the recovery of the $5,000.00 paid to defendant; for the cancellation of the notes for the balance of the purchase price; for the recovery of $583.40 delivery costs; and for the sum of $6,997.00 expended by him in the care of the cattle.

In his answer defendant admits that he sold the cattle to plaintiff on the date and for the price alleged, but denies that he represented the cattle to be either registered or eligible for registration. He further alleges that in the list attached to the bill of sale there were certain typographical errors and the bill of sale was, by mutual mistake, drawn so that it purported to sell eighty-five registered cows; that both parties knew that only eighty-two cows were registered; that plaintiff purchased the herd in an "as is" condition; that plaintiff had an opportunity to inspect the herd and that he accepted the cattle; and that plaintiff did not rely upon any representa-

tion made by defendant, but upon his own judgment and the judgment of his agent.

In his counterclaim defendant alleges that in connection with the sale of the cattle certain notes were executed by plaintiff; that plaintiff neglected to feed the cattle properly; that he defaulted in other respects as a result of which it became necessary for defendant to foreclose the mortgage and that he actually did foreclose and took possession of the cattle; that he thereafter sold the cattle for a total sale price of $18,740.00; that defendant made every effort to correct the typographical errors which appeared in the bill of sale and in the herd or registry books; that all the cattle which were repossessed and which had not been registered were, as of the time of the filing of the answer, registered with the Aberdeen Angus Association; that he incurred certain expenses and that there was a deficiency following the foreclosure and as a result thereof he was entitled to judgment for the deficiency, for expenses, and also for attorney's fees.

In his reply plaintiff alleged that the cattle sold were specifically described and the registry numbers were set forth; furthermore, that the calves were warranted as eligible for registration and also were warranted as the offspring of the specifically described cows, and that thirty-five other calves were warranted as the offspring of the cows.

Evidence offered by plaintiff tended to establish that some registration numbers of cattle listed on the bill of sale properly belonged to cows which defendant Rogerson did not own; that some cows listed and identified on the bill of sale by register number were not among those delivered; that some which were not listed on the bill of sale were delivered; that the Aberdeen Angus Association determined after the delivery of the herd that eighteen of the calves were ineligible for registration; and that plaintiff had endeavored in different ways to determine the pedigree and parentage of the animals

involved and to reconcile the discrepancies between the animals called for by the bill of sale and those actually delivered, without success; all of which led to the writing of the letter by plaintiff on November 19, 1953, in which he elected to rescind the contract and informed defendant that the cattle delivered were being held by him subject to Rogerson's order.

Early in August, 1953, the father of plaintiff went to Rogerson's ranch in Jackson county to look at the cattle being offered for sale. The animals were grazing in various pastures on the ranch and the only inspection made was from horseback. At that time plaintiff's father, who was the manager of plaintiff's ranch, advised Rogerson that plaintiff was interested in purchasing registered cattle, and Rogerson informed him that eighty-two cows and calves in the herd either were registered or eligible for registration.

August 17, 1953, Rogerson went to plaintiff's ranch and entered into the original written contract. At that time $1,000.00 was paid on the purchase price of the cattle and plaintiff agreed to pay an additional $4,000.00 when he was furnished a list of the registered cattle, the balance of the purchase price was to be made in three instalments to be evidenced by notes secured by chattel mortgage. August 27, 1953, plaintiff and his father went to Rogerson's ranch. When they arrived the cattle were not in corrals as they had expected them to be but were in the various pastures. In order to see them it again was necessary to look at the scattered herd from horseback and they did not get to see all of them. They returned to Rogerson's house and examined the herd books; a list of registration numbers was furnished, and the bill of sale, notes and chattel mortgage were then executed. Plaintiff's father, with reference to his first visit to defendant's ranch testified in part as follows:

"Q. The books were all available to you weren't they? A. Yes, we took a look at the books. Q. And they were all there where you could see them? A. Yes. Q. The

registration books? A. He told me the books were in a hell of a mess and it would take a lot of trouble to ever get them up in shape. * * * Q. At that time did you object to Mr. Rogerson about his books on that day? A. No, no, he told me that he'd have to put a lot of work on them, he was away behind on them, he'd have to put a lot of work on them and get them up in shape and we took him at his word and that was all right."

The herd books containing data pertinent to registration of the cattle were delivered to plaintiff August 27, and were returned to defendant one week later.

The trial court sustained the motion to dismiss made by counsel for defendant at the conclusion of plaintiff's evidence. It is clear from the findings of the court that the basis of its judgment was, that plaintiff had failed to determine for himself from available sources of information whether the animals were eligible for registration. The trial court found, inter alia:

"The plaintiff had the opportunity and did examine the pedigree book and could have determined at that time the ineligibility of the calves for registration and could have determined at that time the doubtfulness, if there was doubtful ancestry, of these calves. * * * "In the case before the court, the plaintiff could easily have ascertained the correctness of the representations had he continued with his examination of the books that he had started with. * * *"

As shown by the trial court's findings the issues of fact were resolved against plaintiff on the theory that the action was founded in fraud and deceit and the court applied the rule that under some circumstances in measuring the right to rely upon representations, alleged to be false, every person must use reasonable diligence for his own protection and that, "* * * where the means of knowledge are at hand and are equally available to both parties, and the subject matter is equally open to their inspection, if one of them does not avail himself of those means and opportunities, he will not

be heard to say that he was deceived by the other's misrepresentations." 23 Amer. Juris. p. 962.

While numerous other points are relied on by plaintiff as grounds for reversal, it is not necessary to discuss more than the one directed to the question of a breach of warranty.

Question to be Determined.

*Did plaintiff establish a prima facie case based upon the theory that defendant sold the cattle in question under the express warranty that they were specifically registered cattle, or eligible for registration as the offspring of identified animals?*

█ The question is answered in the affirmative. Plaintiff's right to recovery under the doctrine of express warranty is derived from the Uniform Sales Act, C.R.S. 1953, 121-1-12, which provides in pertinent part as follows:

"Any affirmation of fact or any promise by the seller relating to the goods is an express warranty if the natural tendency of such affirmation or promise is to induce the buyer to purchase the goods, and if the buyer purchases the goods relying thereon. * * *"

The affirmation of fact in the instant case is the statement, oral and written, prior, contemporaneous and subsequent, that the cattle were registered Aberdeen Angus cattle, plus the detailed description of the specific cattle. Certainly, the "natural tendency of such affirmation or promise" was "to induce the buyer to purchase the goods relying thereon." The object of the writing was to affirm, represent and promise, and this is all that is required.

█ This Court has held that an express warranty need not be in any particular form. Thus, in *Denver Surburban Homes and Water Co. v. Fugate,* 63 Colo. 423, 168 Pac. 33, it was said:

"No special form of words is necessary to create a warranty. An averment at the time of the sale is a warranty provided the jury finds from the evidence on the

trial it was so intended, and such intention may be reached as an inference or deduction from the facts or circumstances in connection with all the evidence on the trial and when such deduction is made, if it rests upon proper and sufficient evidence, it becomes proof as a fact of warranty." (Citing *Mastin v. Bartholomew,* 41 Colo. 328, 92 Pac. 682, and other cases.)

From the words which appear in the bill of sale, Exhibit P, and attachment, and from the surrounding circumstances, no inference can be drawn other than that the parties intended that there should be an express warranty. There certainly was an affirmation of fact relating to the kind and quality of the goods sold and thus it satisfies the requirement of section 12 of the Sales Act.

It cannot be disputed that plaintiff relied upon the warranty. It is to be noted that section 12 of the Sales Act requires that the buyer shall rely on the warranty in order to be able to recover for its breach. There is ample evidence in support of this premise. Rudd repeatedly told Rogerson that the cattle were registered or eligible for registration. The bill of sale which contains the warranty was prepared and delivered *after* plaintiff had made the cursory horseback inspection of the cattle. If plaintiff had been purchasing the cattle upon the basis of this inspection it would not have been necessary to specifically describe the herd.

If Rudd had been buying a single cow, or even a small number, it could at least be argued that he was under a duty to investigate ancestry. However, this was a herd of 170 cows, calves and bulls, and such an investigation was not practical, and it was therefore natural, as well as essential, that plaintiff rely upon the representations and warranties of defendant as to their being registered or eligible for registration.

Nonreliance is not established by the fact that Rogerson stated that his books were in a mess. This would not suggest that the books were incapable of being

brought up-to-date. It would not suggest that the parentage of the calves could not be definitely established. The reasonable inference to be drawn from Rogerson's statement was that entries had to be made in order to bring the books up-to-date. However, it was assumed that Rogerson would stand behind the representations and warranties which he was then making.

■ The authorities are agreed that where an expressed warranty is given, the buyer is not precluded from relying upon it, unless his investigation reveals the defect. This is set forth in 77 C.J.S. 1147, wherein the author declares:

"There is no duty on the buyer of goods who purchases with an express warranty to inspect the article purchased, or to exercise care in discovering any defects, or to investigate the truth of the seller's statements; but he may rely on the contract of the seller for the delivery of goods which satisfy the warranty, except that the contract may expressly provide for an inspection or test to be made by the purchaser as a condition, * * *. *The maxim, Caveat emptor, has no application to matters included in an express warranty,* and even where the buyer has an equal opportunity with the seller to form his own judgment as to the character and condition of the property he may receive and rely on a warranty instead. Opportunity on the part of the buyer to inspect does not militate against the availability of an express warranty in the sale." (Emphasis supplied.)

■ Furthermore, even though the buyer makes an inspection the warranty is not rendered inoperative unless the buyer is clearly relying upon his own investigation and waives the warranty. Investigation is compatible with the giving of an express warranty. This, a well recognized rule, is expounded in 77 C.J.S., 1147, 1148.

From the foregoing it follows that the judgment entered by the trial court in favor of defendant upon his counterclaim is erroneous. The judgment is reversed

and the cause remanded with directions to grant a new trial in harmony with the views herein expressed.