**Dr. John NORTON, Appellant,**

v.

**Forrest H. LINDSAY, Appellee.**

**No. 7947.**

United States Court of Appeals
Tenth Circuit.

Aug. 25, 1965.

William R. Young, Denver, Colo. (Theodore J. Kuhlman, Denver, Colo., on the brief), for appellant.

Frederic L. Kirgis, Denver, Colo. (Gorsuch, Kirgis, Campbell, Walker & Grover, Denver, Colo., on the brief), for appellee.

Before PHILLIPS, HILL and SETH, Circuit Judges.

HILL, Circuit Judge.

This diversity action was brought below to rescind a sale of a race horse on the ground of breach of warranty and to recover the amount paid for the horse and the expenses incurred in its maintenance. The appeal is from an order granting plaintiff's motion for summary judgment.

From the record before us we consider the following facts as being without dispute. Appellant, Norton, was the owner of a race horse named Pocket Valu, which he had purchased in Kentucky. At the end of the 1962 racing season, the horse developed an inflammation in its left front foot and was taken to the Veterinary Clinic of Colorado State University for diagnosis and treatment. Doctors Wolff and Adams of the Clinic diagnosed the condition as navicular disease of the horse's front feet and Doctor Wolff performed an operation on the horse to correct the condition. A horse having had this particular operation performed upon it is thereafter referred to as having been "heel nerved". Some months later soreness developed in the horse's legs and a second operation was performed on it to remove some nerve tumors. After the operations the horse had a successful racing season in 1963.

Toward the end of that season appellee, Lindsay, became interested in buying the horse and sent his trainer to Denver to negotiate with Norton. During the negotiations and before the sale was agreed upon, appellant stated that the horse was "sound" and that it had been "heel nerved". Lindsay purchased the horse and paid Norton $40,000, with an oral agreement that if Lindsay retired the horse Norton was to receive stallion services from it.

Within a few weeks after purchasing the horse, Lindsay entered it in a race at Aqueduct Race Track. However, the horse was barred from racing by the track veterinarian because in his opinion it had been "high nerved". This term refers to an operation which is performed upon a horse, severing the main nerve before it enters the horse's foot. The operation disqualifies the horse from racing. Other veterinarians in the East Coast area confirmed the opinion of the track veterinarian to the effect that the horse had been "high nerved". Lindsay then notified Norton about the condi-

tion of the horse and by letter attempted to rescind the sale and made a demand for the return of the sale price and offered to return the horse to Denver. Norton refused the demand and this action was commenced.

After the action was commenced an examination of and an operation on the horse at Norton's request, pursuant to Rule 34, F.R.Civ.P., was had, which conclusively showed that the horse had been "high nerved". After this fact had been established in the case, Norton received permission from the court to file a third-party complaint bringing Doctors Wolff and Adams and Colorado State University into the case as third-party defendants.

On the basis of the pleadings, depositions, affidavits and exhibits on file in the case, the able trial judge concluded that there was no genuine issue of material fact left in the case and granted a summary judgment to the plaintiff on the theory of express warranty.

Appellant attacks the granting of summary judgment upon three grounds: (1) That the summary judgment precluded the third-party defendants from asserting against the plaintiff any defenses they may have under Rule 14(a), F.R. Civ.P.; (2) that a determination of whether the words "sound" and "heel nerved" as spoken by Norton constitute an express warranty is a question of fact for a jury and cannot be disposed of as a matter of law; (3) the question of whether Lindsay relied upon the spoken words "sound" and "heel nerved" as a warranty is a question of fact for the jury.

■ There is no merit to the first point because appellant has no standing to raise the point on behalf of the third-party defendants. They are in court, represented by separate counsel, and are not now here complaining about the summary judgment.

■ At the outset of our consideration of points two and three, it should be pointed out that although appellant urges that the questions referred to in both points are matters to be determined by a jury, no jury demand was made by either side in the case and all questions of law and fact were left for determination by the court. Also, with reference to both points, we must keep in mind the general principles of law governing the granting of motions for summary judgment. That procedure may not be used as a substitute for a trial in the determination of genuine material factual issues. It should be used only in cases in which no issue of a material fact exists. See SMS Manufacturing Company v. U. S.–Mengel Plywoods, 10th Cir., 219 F.2d 606; Hunt v. Pick, 10th Cir., 240 F.2d 782 and Bolack v. Underwood, 10th Cir., 340 F.2d 816.

With reference to appellant's point two, the trial court found, as undisputed, the fact that Norton made at least two affirmations of fact concerning the horse, both of which had a natural tendency to induce a purchase. Those statements were "that the horse was sound" and that "it had been heel nerved" and Norton admitted making both statements. The trial court relied upon the definition of express warranty as set out in Colorado's Uniform Sales Act, C.R.S. 1963, § 121–1–12:

"Any affirmation of fact or any promise by the seller relating to the goods is an express warranty if the natural tendency of such affirmation or promise is to induce the buyer to purchase the goods, and if the buyer purchases the goods relying thereon. No affirmation of the value of the goods, nor any statement purporting to be a statement of the seller's opinion only shall be construed as a warranty."

■ We agree with the trial judge that the affirmation of fact here was the words that "the horse was sound".[1] No

---

1. Appellant also stated that the horse was "heel nerved". The trial court believed that this was tantamount to saying the horse was not high nerved. We do not pass on this contention for the statement the horse was sound establishes the warranty.

special form of words is necessary to constitute a warranty. Rudd v. Rogerson, 133 Colo. 506, 297 P.2d 533 (1956). Appellant puts some stress on the fact that appellee's trainer carefully examined the horse before the sale. The fact that appellee's trainer did inspect the horse but did not detect the defect is of no importance for the facts conclusively show the defect was not ascertainable by a layman. Investigation is compatible with the giving of an express warranty. Only where the buyer clearly relies only upon his own investigation and waives the warranty will it be rendered inoperative, see Rudd v. Rogerson, supra, and Williston on Sales, Revised Edition, Vol. I, § 208 at p. 540.

The word "sound" when used with reference to many animals and especially a horse has a special and particular connotation. The statement that a horse is "sound" implies "the absence of any defect or disease which * * * will impair the animal's natural usefulness for the purpose for which it is purchased * *." 77 C.J.S. Sales § 330. In other words, using the word "sound" in describing the horse in this case clearly constituted an express warranty of fitness as a race horse, which was the purpose for which it was purchased. If, as contended by appellant, the case had been tried to a jury, it would have been incumbent upon the trial judge to instruct the jury, as a matter of law, as to the meaning of the word "sound" under the particular facts of the case. The court was clearly correct in considering, as a matter of law that the use of the word "sound" in describing Pocket Valu constituted an express warranty. Although there are some old cases to the contrary, this is the modern view. See Williston on Sales, supra, § 203.

Appellant's third point likewise is without merit. Williston on Sales, supra, § 206, succinctly disposes of the question in the following language:

"There is danger of giving greater effect to the requirement of reliance than it is entitled to. * * * and as a general rule no evidence of reliance by the buyer is necessary other than the seller's statements were of a kind which naturally would induce the buyer to purchase the goods and that he did purchase the goods."

And later in the same section he continues:

"If a representation was evidently made for the purpose of inducing a sale, and was of a kind appropriate for that purpose and a sale followed, this should be enough."

Making even a stronger showing here, appellee affirmatively, and without contradiction, maintained that he did rely upon the affirmations of appellant.

The trial court properly and judiciously made use of the procedure for summary judgment.

Affirmed.