ACME EQUIPMENT CORPORATION, Respondent, v. MONTGOMERY CO-OPERATIVE CREAMERY ASSOCIATION, Appellant.

*November 30, 1965—January 4, 1966.*

For the appellant there were briefs by *Doherty, Rumble & Butler* of St. Paul, Minnesota, and *Orr, Isaksen, Werner, Lathrop & Heaney* of Madison, and oral argument by *Harold Jordan* of St. Paul, Minnesota, and *Leon E. Isaksen.*

For the respondent there was a brief by *Callahan, Arnold & Van Metre* of Columbus, and oral argument by *E. Clarke Arnold.*

BEILFUSS, J.   There are three issues involved on this appeal: (1) Existence of an express warranty, (2) breach of the warranty, and (3) right to rescind the contract.

Sec. 121.12, Stats., identical to Uniform Sales Act, sec. 12, defines express warranty:

"Any affirmation of fact or any promise by the seller relating to the goods is an express warranty if the natural tendency of such affirmation or promise is to induce the buyer to purchase the goods, and if the buyer purchases the goods relying thereon. No affirmation of the value of the goods, nor any statement purporting to be a statement of the seller's opinion only shall be construed as a warranty."

The trial court did not make a specific finding concerning the existence of an express warranty. However, the court based its decision upon the ground that there was no breach of warranty proved. It, therefore, nec-

essarily determined that an express warranty resulted out of the sales transaction. In any event, we have no hesitation in concluding as a matter of law that an express warranty existed.

The statute requires that the seller make an affirmation of fact or a promise, as distinguished from opinion or mere sales talk. The statute then requires that the buyer be induced to purchase because of the affirmation of fact or promise.

The written statement of Temkin was, "To be in good shape and good working order." It is clear from cases decided under the Uniform Sales Act, sec. 12, that no special wording is necessary to create an express warranty. *Distillers Distributing Corp. v. Sherwood Distilling Co.* (4th Cir. 1950), 180 Fed. (2d) 800; *Nichols v. Lea* (1950), 216 Ark. 388, 225 S. W. (2d) 684; *Stott v. Johnston* (1951), 36 Cal. (2d) 864, 229 Pac. (2d) 348; *Rudd v. Rogerson* (1956), 133 Colo. 506, 297 Pac. (2d) 533.

In *Saunders v. Cowl* (1938), 201 Minn. 574, 277 N. W. 12, an express warranty was found to have been created when a seller selling a six or seven-year-old tent stated that it was "in good condition."

" '. . . Quality of goods' includes their state or condition. The word 'good' itself, when used in connection with chattels, refers to their condition—that they are sound, reliable, right, and not depreciated and the like. . . .'' *Saunders v. Cowl, supra,* page 576.

Similarly, the statement that a piano was "in good condition" created an express warranty. *Schwartz v. Gross* (1952), 93 Ohio App. 445, 114 N. E. (2d) 103.

". . . When the word 'good' is used to describe the 'quality' or 'condition' of a chattel, it may be found to be an affirmation of fact that the chattel is sound, reliable and right, as opposed to the characterization 'poor condition.' " *Schwartz v. Gross, supra,* page 451.

Temkin's statement was clearly an affirmation of fact going to the quality of the goods. Equally clear is the reliance on the statement by Folie and Tuma. They would not close the deal or pay the purchase price until Temkin had written the requested statement on the delivery receipt. In fact they were not satisfied with Temkin's first statement and required him to add to it before they would give him the check. The reliance on the warranty need not be the sole inducement to purchase. 1 Williston, Sales (rev. ed.), pp. 534, 535, sec. 206.

The affirmation of fact and the reliance by Folie and Tuma were sufficient to create an express warranty as a matter of law.

Appellant contends that the trial court erred in finding that appellant failed to prove breach of the warranty. The trial court noted that although Storck found scored cylinder walls, loose packing glands, and the forty-year-old age of the machine, Folie conceded that the packing glands and the age would be no real problem and would make no real difference. This makes the scored cylinder walls and valves the vital issue.

Storck testified variously that the machine was not in good shape and was not in good working order, and that the machine would not run. He also testified, mostly on cross-examination, that the machine would probably run but probably would not perform its function, and that the defects would impair the efficiency of the compressor only.

The trial court found nothing in the record to define "in good shape and good working order." We deem that this phrase is one of common parlance, for which a specific contractual definition was not required. It constituted a sufficient standard for use by the trier of fact in determining whether or not a breach of warranty occurred.

We have already quoted from the opinions of two courts which have considered the definition of "good" in relation to the condition or quality of goods. In *Ward v. Schofferman* (1947), 135 N. J. L. 596, 52 Atl. (2d) 804, the words "good operating condition" were a sufficient warranty to present a fact question on breach.

"[I]n good shape and good working order" is a common phrase made up of words of common, well-known meanings. The trier of fact was presented with a sufficient standard from this phrase to determine whether or not a breach occurred.

The trial court placed great weight on the concession of Storck that the machine would function if installed, and that the scoring on the cylinder walls would affect efficiency only. Then, finding no evidence in the record to indicate to what degree efficiency would be impaired, the trial court concluded that no breach of warranty was proved. The machine was not warranted as a new machine and cannot be expected to work perfectly. An old machine is not a new machine and is not expected to act like one.

While reasonable men might differ on the basis of this record as to whether or not there was a breach of warranty, the findings of the trial court must stand under our familiar and unwavering rule that findings of fact may not be altered on review unless against the great weight and clear preponderance of the evidence. *Guinther v. Schucht* (1965), 26 Wis. (2d) 97, 131 N. W. (2d) 861; *Tiedeman v. Middleton* (1964), 25 Wis. (2d) 443, 130 N. W. (2d) 783; *Estate of Beat* (1964), 25 Wis. (2d) 315, 130 N. W. (2d) 739.

Appellant contends that the rule that the trial court's findings of fact cannot be set aside unless against the great weight and clear preponderance of the evidence cannot apply in this case because the facts are not in dispute. While there was no testimony offered to refute that of Storck, his testimony contains internal incon-

sistencies which required resolution by the trier of fact. The ultimate inference to be drawn from the facts depends upon the relative weight given to the inconsistencies in the evidence, or the lack of sufficient evidence to establish the breach. If undisputed facts reasonably admit of more than one inference, the trier of fact must draw the inference. It is well established that the trier of fact judges credibility of witnesses, weighs the evidence, and draws the inferences from the evidence. *Guinther v. Schucht, supra; Ace Associates v. Nagy* (1961), 13 Wis. (2d) 612, 109 N. W. (2d) 359; *Estate of Fillar* (1960), 10 Wis. (2d) 141, 102 N. W. (2d) 210. Expert opinion is subject to these same rules. *Fehrman v. Smirl* (1963), 20 Wis. (2d) 1, 121 N. W. (2d) 255, 122 N. W. (2d) 439; *Morrill v. Komasinski* (1950), 256 Wis. 417, 41 N. W. (2d) 620. We, therefore, conclude that the relative weight to be given to the inconsistencies in the evidence, or the determination of sufficiency of the evidence was for the trier of fact. The inferences to be drawn from the evidence were also for the trier of fact. Then, the against the great-weight-and-clear-preponderance-of-the-evidence rule becomes applicable.

In looking at the evidence most favorable to respondent and bearing in mind the rule that we cannot change a finding of fact unless against the great weight and clear preponderance of the evidence, we cannot reverse the trial court on this record. The finding "[t]hat there is insufficient evidence to find that the machine was not in good working order" must stand.

Assuming that a breach of warranty had been proved, we note that Montgomery's attempt at rescission was premature. Appellant's own witnesses testified that Temkin told them, in response to their inquiries concerning guarantee, that if something went wrong he would go up and fix it. Courts faced with the question have generally concluded that an agreed remedy is the exclusive remedy of an injured party. *Clark Implement Co.*

*v. Priebe* (1928), 52 S. D. 606, 219 N. W. 475; *Becker Roofing Co. v. Carroll* (1953), 37 Ala. App. 385, 69 So. (2d) 295; *Marion Machine Foundry & Supply Co. v. Cincinnati Coffin Co.* (1955), 162 Ohio St. 455, 124 N. E. (2d) 132.

The agreed remedy was for Temkin to go to Montgomery and fix the machine. However, Folie stopped payment on the check immediately and never gave Temkin an opportunity to repair any defects. This is a drastic act and is especially so when the drawer and payee are strangers and are 275 miles apart.

Even when Folie did call Temkin, he told Temkin only that he was returning the machine. He never gave Temkin an opportunity to make good on any defects, and thus, Montgomery's attempt at rescission was premature.

*By the Court.*—Judgment affirmed.