**ASSOCIATES OF SAN LAZARO, a Colorado Limited Partnership, Petitioner,**

v.

**SAN LAZARO PARK PROPERTIES, a Minnesota General Partnership, Respondent.**

No. 92SC144.

Supreme Court of Colorado, En Banc.

Dec. 13, 1993.

Davis & Weinstein, Jo Ann Weinstein, Erica Richardson Kemmerley, Denver, for petitioner.

Wolf & Slatkin, P.C., Jonathan L. Madison, Denver, for respondent.

Justice KIRSHBAUM delivered the Opinion of the Court.

In *San Lazaro Park Properties v. Associates of San Lazaro*, No. 90CA0479 (Colo. App. Nov. 21, 1991) (not selected for official publication), the court of appeals reversed the trial court's judgment dismissing a civil action filed by the respondent buyer, San Lazaro Park Properties (San Lazaro), against the petitioner seller, the Associates of San Lazaro (the Associates), for breach of express warranties contained in an agreement for the purchase of the San Lazaro Mobile Home Park (the mobile home park). The court of appeals held that the trial court erred in determining that San Lazaro had waived its right to rely on the express warranties, that the warranties were not ambiguous, and that parol evi-

dence was admissible to determine the parties' intent. Having granted certiorari to consider the propriety of the court of appeals' judgment, we reverse and remand with directions.

I

In December 1966, the Board of County Commissioners of Boulder County conditionally approved an application by the owners of land located in the County for a special use permit to construct the mobile home park. The permit authorized the construction of 194 mobile home pads, based on a site plan submitted with the application. Applicable zoning regulations governing the property provided that mobile homes could not be constructed until a building permit authorizing such installation had been issued by the county building inspector.

On June 25, 1969, and August 14, 1969, after receiving complaints regarding the number of mobile homes located in the mobile home park, the Boulder County Land Use Department (the Department) notified the owner of the property that although the approved site plan authorized construction of only 194 mobile home pads, the site plan used by the owner permitted construction of 215 pads. The letters requested the owner to seek County approval of an amended site plan and to immediately bring the mobile home park into compliance with the approved site plan. The owner did not respond to these requests, and the County took no further action.

The Associates purchased the mobile home park in March 1981. At that time approximately 214 occupied mobile homes existed on the property. All of those occupied pads had been built pursuant to permits issued by the Department.

In October 1982, representatives of the Department informed the Associates that fifteen to twenty of the existing mobile homes were not approved. The Department representatives stated that the Department could not approve any building permits for new mobile homes on unauthorized pads.

In March 1983, Larry Saliterman and the Associates executed an agreement for the purchase of the mobile home park. Steven Levine executed the agreement on behalf of the Associates. Bruce Simon, a real estate salesperson, represented Saliterman. The agreement recognizes that a party other than Saliterman might acquire the title to the property at the closing. On the day of the closing Saliterman assigned his rights under the agreement to San Lazaro, a Minnesota partnership including Simon, Saliterman, and a third party.

The agreement contains the following warranty provisions:

The mobile home park owned and operated by [the Associates] consists of 216 mobile home pads, all of which are properly connected for water, a private sewer system and all utilities required for said tenants. The mobile home park is being operated in full and complete compliance with all statutes, ordinances, regulations and rules promulgated by the City of Boulder, the County of Boulder and the State of Colorado and any other political subdivisions or body thereof. There are no pending or threatened actions, investigations or proceedings on the part of any governmental body with respect to the ownership, maintence [sic] and operation of the park or any part thereof.

. . . .

Subject to performance by [San Lazaro], the [Associates] [agree] to execute and deliver a warranty deed conveying marketable title to said premises subject only to the following exceptions:

A. Building and zoning laws, ordinances, State and Federal regulations.

B. Restrictions relating to use and improvement of premises without effective forefeiture [sic] provisions.

C. Reservation of any minerals, or mineral rights to the City of Boulder, the County of Boulder and the State of Colorado.

D. Utility and drainage easements which do not interfere with present park improvements.

E. RIGHTS OF TENANTS AS FOLLOWS: approximately 216 mobile home park pad leases currently entered into by the [Associates].

F. That certain first mortgage entered into and between the [Associates] and in favor of that certain lending institution which constitutes a first mortgage lien upon the premises described in Exhibit "A".

. . . .

All warranties and representations contained in this Purchase Agreement shall survive the closing. This Purchase Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, legatees, representatives, successors and assigns.... This Purchase Agreement contains the entire agreement of the parties hereto and shall not be waived, modified or rescinded, in full or in part, except by a written statement signed by the parties hereto.

In addition, the agreement contains the following two handwritten provisions:

Seller agrees that there are two pads, # 76 & # 78 that at the current time are not rentable. Seller agrees that he shall pay the rent, at the prevailing park rate, until such time that the seller makes the unit habitable and rent [sic] to mobile home owners. In the event said units are not made habitable and rented, the seller shall pay to the buyers the sum of $28,600—cash, 6 months after the date of closing.

. . . .

[San Lazaro] and [the Associates], along with all three realtors, mutually agree to split on an equal basis the sum of $14,-350.00 in cash, payable to [San Lazaro], at the time of closing.

In March of 1983, after the agreement was executed, Simon spoke by telephone with Boulder County Planning Division planner Ken Ziebarth concerning the status of the mobile home park. Ziebarth informed Simon of the zoning problems associated with the property, including the facts that some twenty-one unauthorized mobile home pads had been constructed and that the County wanted to bring the park into compliance with the original site plan. Ziebarth stated that he did not know when the County would take action to address these problems.

On March 24, 1983, Levine wrote a letter to Simon containing the following statements:

I have only had oral communications with the county with reference to the plat. We are platted for 195 spaces. All 216 are within the boundaries of our property. All but 2 are within the boundaries of the plat. I was told that with the exception of the two spaces outside the plat, all changes could be handled administratively. I also have been advised not to rock the boat and nobody will ever say a word about it.

On March 29, 1983, Levine sent Simon another letter containing the following comments:

There are only two or three people in the Boulder County zoning office. If you do call there please keep your inquiries at a low profile because as I said before, I don't think too many waves should be made about the zoning and nothing will ever happen.

On April 19, 1983, Ziebarth wrote a letter to Simon regarding additional research he had performed on the mobile home park, which letter contained the following statements:

2) The approved site plan shows 194 spaces rather than the 215 now occupied or represented.

3) Letters from the planning staff indicate problems began very soon after the approval and are continuing.

4) The present owner has been informed that each building permit to install a mobile home will be compared with the approved site plan and no permits will be issued for unapproved sites. I have confirmed this policy with Gary Goodell who is now both head of Oper-

ational Planning and Chief Building Officer for Boulder County.[1]

The closing occurred on June 2, 1983.

In 1987, two prospective mobile home park tenants applied to the Department for building permits. The applications were denied on the ground that the sites were not authorized by the 1966 special use permit. In October 1988, San Lazaro filed this civil action against the Associates.

San Lazaro's complaint alleged that the Associates had breached written warranties contained in the agreement concerning the available number of mobile home pads and that the Associates fraudulently and negligently misrepresented the number of mobile home pads available for rent. San Lazaro requested a declaratory judgment that, pursuant to the agreement, the Associates must pay San Lazaro $14,300 for each mobile home pad San Lazaro was not able to rent because appropriate permits could not be obtained from the Department.

The Associates denied the allegations of the complaint and asserted by way of affirmative defenses that San Lazaro's purchase of the property was contingent on San Lazaro's inspection, review and approval of the mobile home park; that San Lazaro conducted its own investigation and ultimately waived any express warranties contained in the agreement concerning compliance with applicable county ordinances and regulations; and that San Lazaro was estopped from asserting breach of warranty claims against the Associates.[2]

Following a bench trial, the trial court entered judgment for the Associates and against San Lazaro. The trial court determined that the agreement was ambiguous with respect to the number of available pads, the extent of warranties of compliance with governmental regulations, and whether the express warranties were absolute or were conditioned by San Lazaro's knowledge at the time of sale. The trial court therefore admitted parol evidence to determine the parties' intent. The trial court ultimately concluded that the parties did not intend for the Associates to warrant absolute compliance with governmental restrictions on the use of the property; that the Associates did not breach any warranties of density or use; and that San Lazaro waived any rights for enforcement of the warranties because it independently investigated the zoning problems at the mobile home park and relied on its own investigation rather than on San Lazaro's warranties.

On appeal, the court of appeals reversed. The court of appeals rejected the trial court's conclusion that San Lazaro had waived its right to enforce the express warranties contained in the agreement. The court of appeals stated that "had San Lazaro relied upon its own investigation ... rather than [the] Associates' warranty (as bolstered by its later oral assurances), San Lazaro would have had no reason to acquire the property." Slip op. at 7–8. The court held that the warranties in question were not ambiguous and that the Associates had breached its warranty that the property was in compliance with applicable zoning regulations.

II

The trial court found that although San Lazaro was informed by its own independent investigation of discrepancies between authorized and constructed sites and of potential use problems from non-conformance with applicable zoning regulations, it elected to execute the agreement "and chance being able to resolve these problems in the future." The trial court also found that

---

1. This policy has been referred to by the litigants as Boulder County's "attrition policy."

2. The Associates also asserted a third-party complaint against the County requesting, *inter alia,* that the court enjoin the County from implementing its attrition policy and seeking indemnification from the County in the event the Associates should be found liable to San Lazaro.

The County in turn asserted affirmative defenses to the third party complaint and also asserted cross-claims and counterclaims against San Lazaro and the Associates seeking declaratory and injunctive relief to enforce the 1966 special use permit. Issues raised by these pleadings are not before us.

San Lazaro was informed by the Associates about these issues but nevertheless independently investigated them and "relied upon that investigation." Based on these findings, the trial court concluded that San Lazaro had waived its right to rely on the warranties contained in the agreement. In our view, the record supports the trial court's findings and warrants the conclusion that San Lazaro waived its right to rely on the express warranties.

■ One who intentionally relinquishes a known right waives that right. *Department of Health v. Donahue*, 690 P.2d 243 (Colo.1984); *Ewing v. Colorado Farm Mut. Cas. Co.*, 133 Colo. 447, 296 P.2d 1040 (1956); *Millage v. Spahn*, 115 Colo. 444, 175 P.2d 982 (1946). In the context of purchase and sale agreements, the determination of whether a buyer's conduct constitutes an intentional relinquishment of a seller's express warranty includes consideration of the source of information available to the buyer and a determination of whether the buyer clearly relied upon information obtained by the buyer. *Rudd v. Rogerson*, 133 Colo. 506, 297 P.2d 533 (1956).[3]

■ This rule recognizes and reinforces the significance of warranties in commercial transactions. Sellers are encouraged to warrant only that which they know they can fulfill, while buyers who in fact rely on express warranties may anticipate judicial enforcement thereof. The rule and its policies are not furthered, however, in circumstances wherein a buyer does not rely on warranties made by the seller. In those circumstances, the seller's warranty does not constitute an inducement to the buyer, and enforcement of the warranty might grant the buyer an unfair advantage. If the transaction proves economically sound for the buyer, the buyer will affirm the agreement. If the transaction proves unprofitable, the buyer may seek remedies, including damages, from the seller even though the buyer knew from the outset that the seller could not fully perform the agreement.

■ The court of appeals' observation that San Lazaro would not have entered the transaction had it relied upon its own investigations is directly contrary to the trial court's determination that San Lazaro decided to take a chance on the purchase of the park even though it had independently investigated the issues created by zoning regulations and relied upon its own investigation in deciding to complete the transaction. By necessity, the determination of whether a buyer clearly relied upon the buyer's independent investigation involves substantial factfinding. When evidence in the record supports a trial court's factual findings, those findings will not normally be disturbed on appeal. *Martinez v. Continental Enters.*, 730 P.2d 308 (Colo.1986); *Travelers Ins. Co. v. Wellman*, 721 P.2d 685 (Colo.1986); *Johnson v. Smith*, 675 P.2d 307 (Colo.1984); *Gebhardt v. Gebhardt*, 198 Colo. 28, 595 P.2d 1048 (1979). Any inferences or conclusions drawn by a trial court from such evidence are entitled to similar deference. *People in re M.S.H.*, 656 P.2d 1294 (Colo.1983); *Peterson v. Ground Water Comm'n*, 195 Colo. 508, 579 P.2d 629 (1978); *Goluba v. Griffith*, 830 P.2d 1090 (Colo.App.1991).

■ The evidence clearly establishes that the Associates informed San Lazaro that the number of constructed sites exceeded the number of sites authorized under applicable zoning regulations, that all problems associated with this fact could be handled through governmental administrative processes, and that San Lazaro should not make "too many waves ... about zoning...." San Lazaro did make waves, however. It telephoned a Department official and made an independent inquiry into the extent of the problem. San Lazaro

---

**3.** In *Rudd*, 133 Colo. at 515, 297 P.2d at 538, we stated that "even though the buyer makes an inspection the warranty is not rendered inoperative unless the buyer is clearly relying upon his own investigation and waives the warranty." In *Norton v. Lindsay*, 350 F.2d 46, 49 (10th Cir. 1965), the Tenth Circuit Court of Appeals, citing *Rudd*, framed the test as "where the buyer clearly relies only upon his own investigation and waives the warranty will it be rendered inoperative." We see no practical distinction between these tests, and find the trial court's findings sufficient to establish that San Lazaro relied only on its own investigation.

learned that, contrary to the Associates' suggestions, the Department intended to enforce an attrition policy of denying new building permits for mobile homes on the constructed pads until the zoning requirements governing the original site plan were satisfied. It received a letter to that effect from the Department prior to the closing and elected not to disclose that letter to the Associates. San Lazaro's independent investigation unquestionably produced different information from the warranties made by the Associates.

The question for resolution at trial was whether San Lazaro relied upon its own investigations in deciding to consummate the transaction or instead relied upon the written representations of the Associates. The trial court found that San Lazaro did not rely on the representations of the Associates. In our view, the evidence supports this finding, and establishes that San Lazaro clearly relied only on the information it independently gathered from Boulder County officials—information that contradicted the Associates' representations.

We conclude, as did the trial court, that under all the circumstances San Lazaro waived its right to rely on the express warranties contained in the agreement. In view of this holding, we need not address issues concerning the meaning and effect of those warranties.

### III

The judgment of the court of appeals is reversed, and the case is remanded to that court with directions to reinstate the judgment of the trial court.