R. C. SCHROEDER, appellee, v. CEDAR RAPIDS LODGE No. 304, LOYAL ORDER OF MOOSE, appellant.

No. 47784.

(Reported in 49 N.W.2d 880)

NOVEMBER 13, 1951.

L. M. Hullinger and Edward J. Dahms, both of Cedar Rapids, for appellant.

John C. Eichhorn and Crissman & Bleakley, all of Cedar Rapids, for appellee.

MULRONEY, J.—Plaintiff operates the Standard Electric Company in Cedar Rapids, Iowa. He brings this suit against Cedar Rapids Lodge No. 304, Loyal Order of Moose, for $1056.95, alleging this sum is due on his oral contract to furnish labor and materials to remodel and repair the electric lighting and service in defendant's building. The petition alleges his performance of the contract and payments to him for labor and material in the sum of $5821.23 and alleges the balance due, or $1056.95, "represents the reasonable worth and value of a specially built motor-operated dimmer" furnished by plaintiff in fulfillment of his contract but not installed because defendant refused to permit him to install it. The petition alleges "that the aforesaid motor-operated dimmer was specially designed and manufactured in accordance with defendant's specifications, for adaption to defendant's special uses, and is not suitable for sale to others in the ordinary course of plaintiff's business." In response to a motion, plaintiff alleged the contract was entered into with defendant's agent, John W. Dahl, acting on behalf of defendant.

Defendant's answer denies that any contract it might have had with plaintiff included a contract to furnish the dimmer;

denies that it ever ordered the dimmer; and denies that it contracted with plaintiff to order the dimmer. The answer denies the authority of Dahl to act as its agent or contract in its behalf and raises the issue of the statute of frauds, or section 554.4, Code, 1950.

At the conclusion of the testimony the trial court withdrew the issue of the statute of frauds and after overruling defendant's motion for directed verdict the case was submitted to the jury, resulting in a verdict for plaintiff in the sum of $1056.95. Defendant appeals from the judgment thereon asserting error (1) in the trial court's failure to direct the verdict because of insufficient evidence to establish Dahl's authority to act as defendant's agent, and (2) in withdrawing the issue of the applicability of the statute of frauds to this case.

I. The record shows that John W. Dahl was the paid secretary and business manager of the Moose Lodge. He was in charge of defendant's building and he has twenty-five employees under him. He does the hiring and firing of employees, all of the banking for the lodge and is one of the three officers who signs checks. There was remodeling done on the building in 1946 and Dahl testified that he "employed the contractors, and so forth, and was in charge of that remodeling." He stated: "I am in charge of the repairs that are necessary to the building. * * * When repairs are made, I employ the contractors or persons to make the repairs." Further, with respect to the repairs and remodeling here involved in 1947, Mr. Dahl testified: ·

"I had an architect draw the plans for this remodeling and designing—a Mr. Barnhizer, and I hired him. * * * After he drew the plans, our Board of Directors and I sat down and discussed those matters with him and okayed them up to a certain degree. * * * We did not have a general contractor—we had various contractors such as the carpenter . contractor * * * plumbing contractor [and others]."

It appears without question that Mr. Dahl hired plaintiff as the electrical contractor to do the electric work called for by the architect's plans. Mr. Schroeder testified that he was called to Mr. Dahl's office sometime in April 1947, and he stated:

"I went over and found Mr. Barnhizer and Mr. Dahl. I had a conversation there with Mr. Dahl. He said that the Moose Lodge was planning to remodel the third floor of their building, and had a set of plans there, showed them to me, and asked if I was in a position to obtain the necessary materials and furnish the labor to install this job of remodeling. At that time, of course, material and labor were both critical and very difficult to get a hold of. I told him I could, after looking at the plans for a few minutes. I went over the plans and drawings with Mr. Dahl at that time. * * * He told me that the main thing that he wanted to have done was to have all this electrical work finished by some date in the fall, I have forgotten the date, inasmuch as there was, I believe, a State convention of some kind that was going to be here for a week, and he was very much interested in expediting this job and getting it done so it would be finished before the convention. I told Mr. Dahl that I could do the job and that I would furnish the labor and material necessary to do it. * * * He said to get the material and get it done."

There is no use detailing the work done by plaintiff and his employees in fulfillment of the contract. It is enough to say that plaintiff immediately commenced the layout work. The plans called for the dimmer control and as soon as plaintiff received instructions from Mr. Barnhizer as to the lights to be controlled he ordered the dimmer from the Van Meter Company. The dimmer arrived about the time of the convention and about the time plaintiff had completed all of the work with the exception of the installation of this dimmer. When plaintiff went to Dahl to tell him the dimmer had arrived Dahl said they were too busy then; after the convention plaintiff again saw Dahl, and plaintiff testified:

"And he said he did not want the dimmer. I told him it was a specially ordered apparatus to fill this particular job, and it would not work any place else except in a place where exactly the same characteristics existed as were in this remodeling job, and I said 'We can't put it back into stock because it is something you don't sell only once in a lifetime,' and he said, 'Well, send it back to the factory.' "

Plaintiff testified that the above conversation was the first time he was notified by Dahl or anyone that the Moose Lodge did not want the dimmer.

The foregoing evidence was much more than sufficient to carry the issue of Dahl's authority to act as defendant's agent to the jury. Indeed it seems firmly established by all of the testimony that Dahl had general authority to contract for the electrical repairs; that defendant recognized this authority and paid for all but the dimmer and really defends on the ground that Dahl did not have authority to contract with respect to the dimmer. On such a defense that the general authority to contract for repairs was limited defendant would have the burden of proof. But defendant's main argument on the insufficiency of the evidence to establish Dahl's authority is the contention that an agency relationship cannot be established by the declarations of the agent. The testimony of an alleged agent is admissible to prove agency. 3 C. J. S., Agency, section 322b. The rule which defendant has in mind is stated in 3 C. J. S., Agency, section 322c(1), as follows:

"In the absence of other evidence of agency, the extrajudicial declarations of an alleged agent to a third person are not admissible, over objection, against the alleged principal to prove agency * * *."

The above rule has no application here.

II. Defendant's argument under the second assignment of error is based on section 554.4, Code, 1950, which provides in part as follows:

"1. A contract to sell or a sale of any goods or choses in action shall not be enforceable by action unless the buyer shall accept part of the goods or choses in action so contracted to be sold or sold and actually receive the same or give something in earnest to bind the contract, or in part payment, or unless some note or memorandum in writing of the contract or sale be signed by the party to be charged or his agent in that behalf.

"2. * * * but if the goods are to be manufactured by the seller especially for the buyer and are not suitable for sale to others in the ordinary course of the seller's business, the provisions of this section shall not apply."

■ Defendant's argument is that the evidence shows the dimmer was not delivered, that no earnest money was paid, and there was no written memorandum. Defendant then argues that the question of whether the dimmer was suitable for sale to others in the ordinary course of plaintiff's business was for the jury. But the contract must be construed as a whole. Plaintiff's suit is based on an oral contract to furnish all labor and materials for an electrical improvement job according to the plans, specifications and directions furnished and given to plaintiff by defendant's designing engineer, of which contract the furnishing and installing the dimmer was but one part. The first question is whether the contract was a contract for work, labor and materials or a contract of sale. As stated in 37 C. J. S., Frauds, Statute of, section 141c: "A contract for work, labor, and materials is not a contract of sale within the statute of frauds."

■ All of the evidence here shows the contract sued upon was a contract for work, labor and materials.

In United States v. San Francisco Electrical Contractors Assn., 57 F. Supp. 57, 67 (decided 1944), it is held: "* * * that an agreement to build a structure according to another's plans and specifications *is not an agreement of sale* of any of the materials which may enter into its composition. Flynn v. Dougherty, 1891, 91 Cal. 669, 27 P. 1080, 14 L.R.A. 230; Golden E. M. Co. v. Old Homestead Bakery, 1922, 59 Cal. App. 541, 545, 211 P. 56; Mitchell Camera Corp. v. Fox Film Corp., 1937, 8 Cal.2d 192, 199, 200, 64 P.2d 946; Sidney Stevens Implement Co. v. Hintze, 1937, 92 Utah 264, 67 P.2d 632, 635, 636, 111 A.L.R. 331."

A case much in point on the facts is Carlson, Holmes & Bromstad, Inc. v. M. I. Stewart & Co., Inc., 147 Misc. 607, 608, 264 N.Y.S. 277, 278. In this case the plaintiff contracted to install a beauty parlor in defendant's store—plaintiff to furnish materials and work in accordance with detailed plans and instructions. After plaintiff built the fixtures defendant refused to set a date for installation. Plaintiff recovered the agreed price less what it would have cost to install the fixtures. There as here the defendant contended "that the transaction was a sale and is to be governed by the provisions of the Sales Act." The court reviewed the terms of the contract and held:

"The agreement, as a whole and in its every provision, is a construction contract. A unit, a beauty parlor, was to be built and installed. The individual fixtures, as such, meant nothing to the owner. Certain it is that we have here a type of contract which would not come within the statute of frauds."

To the same effect see Crystal Recreation, Inc. v. Seattle Association of Credit Men, 34 Wash.2d 553, 209 P.2d 358, where it was held that a contract to construct and install fixtures and equipment for a restaurant was not a contract of sale within the provisions of the Uniform Sales Act.

The contract which plaintiff's evidence tended to establish was a work, labor and material contract. Defendant's evidence consisted of a denial, mostly on the ground of lack of authority of the alleged contracting agent. There was no evidence in the case tending to establish a contract of sale. The trial court correctly withdrew the issue of the statute of frauds under the Sales Law, or section 554.4, Code, 1950.

Finding no error the judgment is affirmed.—Affirmed.

All JUSTICES concur.