### BETTY EPSTEIN *v.* MARIE GIANNATTASIO ET AL.

COURT OF COMMON PLEAS    FAIRFIELD COUNTY    FILE No. 82912
AT BRIDGEPORT

Memorandum filed December 10, 1963

*Saltman & Weiss,* of Bridgeport, for the plaintiff.

*Shapiro & Belinkie,* of Bridgeport, for the named defendant.

*Cotter & Cotter,* of Bridgeport, for defendant Sales Affiliates, Inc.

*Goldstein & Peck,* of Bridgeport, for defendant Clairol, Inc.

LUGG, J. On or about 5 October, 1962, the plaintiff visited a beauty parlor, conducted by the defendant Giannattasio, for the purpose of receiving a beauty treatment. During the course of that treatment, Giannattasio used a product called "Zotos 30-day Color," manufactured by defendant Sales Affiliates, Inc., and a prebleach manufactured by defendant Clairol, Inc. The plaintiff claims that as a result of the treatment she suffered acute dermatitis, disfigurement resulting from loss of hair, and other injuries and damages.

The complaint sets forth two causes of action against each defendant, the first sounding in negligence and the second in breach of warranty. Each of the defendants demurs to the latter: Giannattasio and Sales Affiliates, Inc., on the single ground that the transaction does not amount to a contract for the sale of goods; Clairol, Inc., on the same ground and also because any warranties which may have been given by it do not extend to the plaintiff.

The second ground of the demurrer of Clairol, Inc., is overruled. The decision of this court in *Simpson* v. *Powered Products of Mich., Inc.,* 24 Conn. Sup. 409, is controlling.

As to the remaining three grounds of demurrer, the applicable statutory law is the Uniform Commercial Code, adopted by this state as title 42a of the General Statutes. The issue reduces itself to the

simple one of whether or not the use of the products involved in the course of the beauty treatment amounts to a sale or a contract for sale of goods under the pertinent sections of the code. Section 42a-2-102 provides: "[T]his article [Sales] applies to transactions in goods . . . ." The word "transaction" is not defined in the act. "Goods" is defined in § 42a-2-105 as follows: " 'Goods' means all things, including specially manufactured goods, which are movable at the time of identification to the contract for sale . . ." Section 42a-2-106 limits the words "contract" and "agreement," as used in the article, to the present or future sale of goods. "Contract for sale" includes a present sale of goods. § 42a-2-106. "A 'sale' consists in the passing of title from the seller to the buyer for a price as provided by section 42a-2-401." § 42a-2-106.

There is a dearth of case law construing the statutes so far as concerns the claims made by the plaintiff. In Connecticut, only those cases which deal with the sale of food under the former Sales Act are relevant. It has been held repeatedly "that in Connecticut the service of food in a restaurant for immediate consumption on the premises does not constitute a sale." *Albrecht* v. *Rubenstein,* 135 Conn. 243, 245 (1948). The phraseology in the instant complaint does not set out an express warranty such as was referred to in the *Albrecht* case, and the discussion in that case concerning implied warranties is therefore in point. See also *Lynch* v. *Hotel Bond Co.,* 117 Conn. 128 (1933). The following language in the latter case (p. 131) is pertinent here: "The only thing that is 'sold' is the personal service rendered in the preparation and presentation of the food, the various essentials to its comfortable consumption or other facilities provided, and the privilege of consuming so much of the meal ordered as the guest may desire. Service is the predominant

feature of the transaction. If there is a transfer of title to the food actually consumed, it is merely incidental and does not constitute a sale of goods within the contemplation of the Sales Act, and there is therefore no implied warranty of its quality under the law of sales."

In a later decision, *United Aircraft Corporation v. O'Connor,* 141 Conn. 530 (1954), although the facts differed, the rationale of the previous decisions applies. "We must turn, then, to the five contracts between the plaintiff and the federal government to determine whether they are contracts for services or contracts for sale of tangible personal property. The determinant is to be found in the intention of the parties to those contracts. That intention is to be ascertained from the language used, interpreted in the light of the situation of the parties and the circumstances surrounding them." Id., 537.

As the complaint alleges, the plaintiff asked Giannattasio for a beauty treatment, and not for the purchase of goods. From such language, it could not be inferred that it was the intention of either party that the transaction be a transaction in goods within the meaning of the code. This claim of the plaintiff is hence distinguished more by the ingenuity of its conception than by the strength of its persuasion.

There is another line of cases which involves blood transfusions received by patients in the course of medical care and treatment in hospitals. These concern the claim that injuries caused by such transfusions ground a recovery under the Sales Act. This claim has been universally rejected. "Such a contract is clearly one for services, and, just as clearly, it is not divisible. . . . It has long been recognized that, when service predominates, and transfer of personal property is but an incidental

feature of the transaction, the transaction is not deemed a sale within the Sales Act." *Perlmutter* v. *Beth David Hospital,* 308 N.Y. 100, 104 (1954). To the same effect are *Dibblee* v. *Dr. W. H. Groves Latter-Day Saints Hospital,* 12 Utah 2d 241 (1961), and *Gile* v. *Kennewick Public Hospital, District,* 48 Wash. 2d 774 (1956).

There are other cases, involving differing facts, which have decided that "when service is the predominant, and transfer of title to personal property the incidental, feature of a transaction, the transaction is not a sale of goods within the application of statutes relating to sales." *Kenney* v. *Wong Len,* 81 N.H. 427, 436 (1925) (sale of food) (cited in *Lynch* v. *Hotel Bond Co.,* supra, 131); cf. *Sofman* v. *Denham Food Service, Inc.,* 37 N.J. 304 (1962) (involving service in a restaurant).

Building and construction transactions which include materials to be incorporated into the structure are not agreements of sale. *United States* v. *San Francisco Electrical Contractors Assn.,* 57 F. Sup. 57 (N.D. Cal. 1944); *Wm. H. Wise & Co.* v. *Rand McNally & Co.,* 195 F. Sup. 621 (S.D. N.Y. 1961); *Foley Corporation* v. *Dove,* 101 A.2d 841 (D.C. Munic. Ct. App. 1954); *Aced* v. *Hobbs-Sesack Plumbing Co.,* 55 Cal. 2d 573 (1961); *Shroeder* v. *Cedar Rapids Lodge No. 304,* 242 Iowa 1297 (1951); *Volk* v. *Evatt,* 26 Ohio Op. 417 (B.T.A. 1943), aff'd, 142 Ohio St. 335 (1943); *York Heating & Ventilating Co.* v. *Flannery,* 87 Pa. Super. 19 (1926); *Crystal Recreation, Inc.* v. *Seattle Assn. of Credit Men,* 34 Wash. 2d 553 (1949).

The language in the second count against Giannattasio alleges that "[t]he Defendant #1, in recommending and applying said products to the plaintiff thereby warranted . . . ." This amounts to a claim of implied warranty. The fourth and sixth counts

aver implied warranty in terms. When this plaintiff made her arrangement with the beauty parlor, she did so as the complaint sets forth: ". . . for the purpose of receiving a beauty treatment." Obviously, the subject of the contract was not a sale of goods but the rendition of services. The materials used in the performance of those services were patently incidental to that subject, which was a treatment and not the purchase of an article.

All three demurrers are therefore sustained, on the grounds stated, to counts 2, 4 and 6.