DOYLE DAILEY and GUNVALD SANDE, d/b/a E-Z WASH LAUNDRO-MAT, appellees, v. HOLIDAY DISTRIBUTING CORPORATION, and Speed Queen, a division of McGraw-Edison Company, appellants.

No. 52534.

(Reported in 151 N.W.2d 477)

June 6, 1967.

George E. Wright and James A. Lorentzen, of Des Moines, for Holiday Distributing Corporation, appellant.

Malcolm D. Young, of Omaha, Nebraska, and Leland C. White, of Harlan, for Speed Queen, a Division of McGraw-Edison Company, appellant.

Winkel & Winkel, of Algona, for appellees.

RAWLINGS, J.—Action at law by purchasers of dry cleaning machinery to recover damages for breach of warranties, express and implied, from manufacturer and dealer. From judgment for

plaintiffs on trial to the court both defendants appeal. We reverse.

January 15, 1962, plaintiffs Doyle Dailey and Gunvald Sande bought from defendant Holiday Distributing Corporation, for installation in Algona, a twin unit automatic dry cleaner with instruction sign and auxiliary exhaust fan, manufactured by defendant Speed Queen, a Division of McGraw-Edison Company. Total cost was $7506.46.

An unqualified purchase order appears on the face of a printed form, apparently prepared by defendant Holiday. It contains no reference to special conditions printed on the reverse side relating to warranties, defects, verbal understandings and other miscellaneous matters.

About April 7, 1962, installation of the machinery by defendant Holiday was completed.

Within two days mechanical problems arose. First a motor burned out. Then the doors periodically locked shut, making it impossible for customers to use the machine. The motor was replaced. However door troubles continued.

In an effort to correct this problem plaintiffs, at the suggestion of Holiday, installed an additional exhaust fan in the north wall behind the dry cleaner. This did not serve the desired purpose.

In June an employee of defendant Speed Queen visited plaintiffs' plant, and after working on the equipment advised plaintiffs the installation of grills or louvers in the south wall was necessary to permit circulation of more air. This too was done but the doors still locked.

Other mechanical difficulties developed from time to time. For example the solvent pump leaked, springs broke, the solution would not drain, valves did not function, wiring had to be replaced and starting coils burned out.

In accord with a suggestion by Holiday representatives these plaintiffs repeatedly called in a local refrigeration man for service work. Holiday's repairmen also periodically but unsuccessfully attempted to effect necessary repairs.

According to plaintiffs' testimony one unit or the other was out of operation three fourths of the time from installation to October 1963.

Plaintiffs also determined cost of operation the first five or six months was at least $2.00 for each load.

Holiday was repeatedly advised the machines were not functioning properly.

Testimony by defendants is to the effect the equipment was neither operated correctly nor properly maintained.

In November 1962, plaintiffs wrote Speed Queen reporting trouble with the machinery.

December 1, 1962, plaintiff Sande communicated with Holiday stating in substance the dry cleaner had never worked properly, and as a result he and Dailey wanted to be reimbursed for their investment and expenses.

Then April 29, 1963, an attorney for plaintiffs, by letter, advised Holiday the implied and express warranties covering the machine had been breached, with a demand for return of the purchase price and reimbursement for expenses.

In October 1963, plaintiffs abandoned use of the machine.

I. Plaintiffs commenced their original action against Holiday June 17, 1963. They then alleged rescission foundationed upon breach of warranty.

Later an amended and substituted petition was filed based on breach of express and implied warranties with demand for damages. Speed Queen was then brought in as an additional defendant.

Subsequently plaintiffs amended, again claiming rescission. May 20, 1965, this amendment was withdrawn. Trial commenced the same day on plaintiffs' damage action against both defendants for breach of warranties.

Defendant Holiday asserts error in permitting the last amendment by plaintiffs.

■ A trial court has broad discretion in permitting or denying amendments and unless the discretion is abused we will not interfere.

■ ■ And to allow is the rule, not the exception. See Claeys v. Moldenschardt, 260 Iowa 36, 148 N.W.2d 479, 483; Durant Elevator Co. v. S. J. Hoffman & Sons, 259 Iowa 500, 145 N.W.2d 25, 26, 27; and Webber v. E. K. Larimer Hardware Co., 234 Iowa 1381, 1389, 15 N.W.2d 286.

However, an amendment should not be permitted under rule 88, R. C. P., if it materially changes the issues involved.

In Akkerman v. Gersema, 260 Iowa 432, 149 N.W.2d 856, 860, we found no abuse of discretion in permitting a party first seeking relief by declaratory judgment action to amend and ask reformation of contract. See also Cook, Iowa Rules of Civil Procedure, Volume 1, page 551.

■ Rescission is the unmaking of a contract.

■ Breach of warranty means the infraction of an express or implied agreement as to the title, quality, content or condition of a thing sold or bailed. See Rasmus v. A. O. Smith Corporation, 158 F. Supp. 70, 78–80; Morris Plan Leasing Co. v. Bingham Feed and Grain Co., 259 Iowa 404, 143 N.W.2d 404, 414; United States Hoffman Machinery Corp. v. Carlson, 253 Iowa 304, 309, 111 N.W.2d 271; and Broer v. Dr. Fenton's Vigortone Co., 231 Iowa 1276, 1278, 4 N.W.2d 416.

■ Breach of warranty *may* be the foundation upon which rescission is based but in itself does not constitute rescission. United States Hoffman Machinery Corp. v. Carlson, supra, loc. cit., 253 Iowa 307.

. While thus distinguishable, both still stand in the field of contracts. Rasmus v. A. O. Smith Corp., 158 F. Supp. 70, 78, 79, and Prosser on Torts, Hornbook Series, Third Ed., pages 644 and 651.

■ By the May 20 amendment plaintiffs in effect abandoned the rescission theory and reverted to their earlier action based on alleged breach of warranty.

Under these circumstances we find no basis upon which to hold abuse of discretion on the part of the trial court in permitting plaintiffs to fall back upon their May 20 amendment.

■ ■ II. As stated in Morris Plan Leasing Co. v. Bingham Feed and Grain Co., 259 Iowa 404, 413, 143 N.W.2d 404, 410: "This case is not reviewable de novo here but only on errors assigned. The evidence will be viewed in the light most favorable to plaintiff—this is also the light most favorable to the trial court's judgment. Its findings of fact have the effect of a special verdict and are binding upon us if supported by substantial evidence. Citation of authority is unnecessary. Rule

344(f)1, Rules of Civil Procedure. Our question is whether the trial court's findings are supported by substantial evidence, and we will not weigh the evidence or the credibility of the witnesses. [Authorities cited.] The rule does not exclude inquiry into the question whether, conceding the truth of a finding of fact, a conclusion of law drawn therefrom by the trial court is correct, nor does it apply if in arriving at a finding the court erred in its ruling on evidence or in other respects upon questions of law which materially affect the decision." (Authorities cited.)

III. Both defendants assert error by the trial court in finding there was a breach of express warranty.

For convenience we shall first consider the position taken by Speed Queen on this issue.

By way of exclusion there is no evidence disclosing any express warranty was ever advanced, made or given to plaintiffs by defendant manufacturer.

In fact the only possible basis upon which any claim to the contrary could stand is that Holiday acted as agent for Speed Queen.

■ Plaintiffs' pleading alleges, in part, Holiday acted as agent, jobber and broker for Speed Queen. This blanket conclusion is admitted by Holiday's answer. However that alone is not binding on defendant Speed Queen which denied any such relationship.

■ "Agency is a fiduciary relation which results from the manifestation of consent by one person, the principal, that another, the agent, shall act on the former's behalf and subject to his control, and consent by the other so to act." Reed v. Bunger, 255 Iowa 322, 328, 122 N.W.2d 290.

■ An agent may testify as to his authority. Johnson v. Aeroil Products Co., Inc., 255 Iowa 931, 936, 124 N.W.2d 425.

But his extra-judicial statements to a third person are not admissible, over objection, to prove a principal and agent relationship between himself and another. Robinson v. Home Fire & Marine Ins. Co., 244 Iowa 1084, 1089, 59 N.W.2d 776; Schroeder v. Cedar Rapids Lodge, 242 Iowa 1297, 1301, 49 N.W.2d 880; Friedman v. Forest City, 239 Iowa 112, 126, 30 N.W.2d 752; McDonald v. Dodge, 231 Iowa 325, 327, 328, 1 N.W.2d 280; and 3 C. J. S., Agency, section 322(c), page 276.

Incidentally, Restatement, Second, Agency, section 14J, provides: "One who receives goods from another for resale to a third person is not thereby the other's agent in the transaction: whether he is an agent for this purpose or is himself a buyer depends upon whether the parties agree that his duty is to act primarily for the benefit of the one delivering the goods to him or is to act primarily for his own benefit."

Plaintiffs, having made the affirmative assertion of an agency relationship between these two defendants, had the burden of proving it by a preponderance of the evidence. Rule 344 (f) (5) (6), R. C. P.; Reed v. Bunger, supra, loc. cit., 255 Iowa 329; and McDonald v. Dodge, supra, loc. cit., 231 Iowa 328. This they failed to do.

We have no alternative but to conclude the trial court erred in finding defendant Speed Queen ever made or gave any express warranty upon which plaintiffs may rely.

IV. The next question presented is whether Holiday can be held responsible by reason of express warranty.

Plaintiffs contend they were told by a representative of this defendant, during sales negotiations and prior to signing the purchase order, the cleaning units would operate for not more than 30¢ a load but actual cost was at least $2.00.

Early decisions held mere affirmations or representations by a seller as to the condition of a thing offered for sale did not attain the status of a warranty. American Fruit Product Co. v. Davenport Vinegar & Pickling Works, 172 Iowa 683, 699, 154 N.W. 1031.

This doctrine has more recently been abandoned. It is now generally recognized no particular form of words need be used in order to create a warranty.

In fact the matter was at least partially resolved in accord with the modern rule by section 554.13, Code 1962, here applicable, which provides: "Any affirmation of fact or any promise by the seller relating to the goods is an express warranty if the natural tendency of such affirmation or promise is to induce the buyer to purchase the goods, and if the buyer purchases the goods relying thereon. No affirmation of the value of the goods nor any statement purporting to be a statement of the

seller's opinion only shall be construed as a warranty." See also section 554.2313, Code 1966.

 We conclude the statement made as to operating costs of the subject machine was more than sales talk, being, under the circumstances, an inducing representation or affirmation of fact given in such terms as to attain the status of a warranty.

It is also evident plaintiffs relied in part at least on this sale inducing statement. Had they been aware of the fact the machine here concerned would not operate for less than $2.00 a load, it is safe to assume the purchase would never have been made. In support hereof, see Distillers Distributing Corp. v. Sherwood Distilling Co. (4 Cir.), 180 F.2d 800, 802, 803; Farmers State Bank v. Cook, 251 Iowa 942, 947, 103 N.W.2d 704; Marxen v. Meredith, 246 Iowa 1173, 1178, 1179, 69 N.W.2d 399; Mitchell v. Pinckney, 127 Iowa 696, 698, 699, 104 N.W. 286; Watson v. Brown, 113 Iowa 308, 311, 85 N.W. 28; Valerius & Co. v. Hockspiere, 87 Iowa 332, 334, 335, 54 N.W. 136; Garbark v. Newman, 155 Neb. 188, 51 N.W.2d 315, 321, 322; Wat Henry Pontiac Co. v. Bradley, 202 Okla. 82, 210 P.2d 348, 351; Acme Equip. Corp. v. Montgomery Coop. Cream. Assn., 29 Wis.2d 355, 138 N.W.2d 729, 731; 77 C. J. S., Sales, section 308, page 1131; and 46 Am. Jur., Sales, section 313, page 494.

The trial court found a breach of express warranty by defendant Holiday. This finding stands supported by substantial evidence.

 V. We turn now to Exhibit "A", the face page being a complete purchase order signed by Dailey on behalf of plaintiffs. It was presented to plaintiffs for execution in the form of a tablet with several pages and carbons.

The reverse side of this instrument contains printed material which to the extent here relevant provides as follows:

"The seller warrants all new machinery for the same period as the manufacturer of same, from date of shipment, against defects in material or workmanship—the seller's obligation being limited, however, to furnishing replacement only for any part returned f.o.b. our factory within such period and found by the seller to have been thus defective.

"This warranty is contingent upon use of the equipment under normal operating conditions. * * * These warranties are in lieu of all other warranties expressed or implied.

"ALL PROMISES AND VERBAL UNDERSTANDINGS OR AGREE-MENTS OF ANY KIND PERTAINING TO THIS CONTRACT NOT SHOWN HEREIN ARE EXPRESSLY ABROGATED AND WAIVED."

As previously stated the purchase order makes no reference to any warranties, conditions or exclusions on the reverse side of the document. Furthermore neither plaintiff recalls having ever seen the printed material to which reference is here made. And a salesman for Holiday admitted there was never any conversation about the "back-side" of Exhibit "A".

A comparable situation was presented in Reliance Varnish Co. v. Mullins Lumber Co., 213 S. C. 84, 97, 48 S.E.2d 653, 659, where a limitation on warranty was in fine print with a showing made it had never been brought to the attention of the buyers. There the court said: "Both the president and vice-president and treasurer of appellant testified that they had not previously observed such stipulation and it was never called to their attention. It is so located as to easily escape attention. Certainly it could not be said as a matter of law that appellant should have been aware of the stipulation. The rule in this state, is that for such a clause to be applicable in any case it must be shown that it was brought to the attention of the purchaser.' * * *."

Under existing circumstances we are satisfied the exclusions or conditions here concerned are inapplicable and accord Holiday no relief by reason of what may best be described as evasive concealment on its part.

In support hereof see the majority view expressed in International Milling Co. v. Gisch, 258 Iowa 63, 137 N.W.2d 625, 631, 632. And see Boeing Airplane Company v. O'Malley (8 Cir.), 329 F.2d 585, 593; Steele v. J. I. Case Company, 197 Kan. 554, 419 P.2d 902, 909; and 77 C. J. S., Sales, sections 312(c), 317 (b), at pages 1152, 1167.

Upon the basis of the factual situation disclosed we conclude the alleged disclaimer of warranties by defendant Holiday was of no legal force or effect.

VI. This then leaves open the question as to whether any

warranties by implication existed between plaintiffs and defendants.

In State Farm Mut. Auto. Ins. Co. v. Anderson-Weber, Inc., 252 Iowa 1289, 1301, 110 N.W.2d 449, we said:

"In Iowa the old rule of nonliability for negligence of a manufacturer of goods except to one in privity of contract has been repudiated. See discussion in Thompson v. Burke Engineering Sales Co., 252 Iowa 146, 153, 106 N.W.2d 351, 356, and citations.

"The same reasoning applies in warranty as in negligence cases."

And under the provisions of section 554.16, Code 1962, there is an implied warranty that goods are reasonably fit for the purpose for which sold or bailed, of merchantable quality, and have a quality or fitness for a particular purpose annexed by the usage of trade.

In the case now before us there was only one purpose for which the instrumentality sold to plaintiffs could be used, which was as obvious to defendants as to buyers. See in this regard Clover Cutting Die Co., Inc. v. Sam Smith Shoe Corp., 96 N. H. 491, 79 A.2d 8, and Pierce v. Crowl, 200 Okla. 27, 190 P.2d 1003, 1005.

And in Farmers State Bank v. Cook, 251 Iowa 942, 947, 103 N.W.2d 704, this court said:

"It is well established in this jurisdiction that a buyer may rely on his own judgment as to some matters visible to him, and may rely upon the seller's representations as to others. Drager v. Carlson Hybrid Corn Co., Inc., 244 Iowa 78, 84, 56 N.W.2d 18, 20, and citations; Evans v. Palmer, 137 Iowa 425, 114 N.W. 912. When he does so and the seller is, or should be, aware that reliance is placed upon an erroneous representation, a breach of warranty results, and certain options set forth in section 554.70, Code of 1958, become available to the buyer. Undiscovered hidden defects do not deprive the buyer of the benefit of an established warranty. Risser v. Cox, 187 Iowa 990, 174 N.W. 701.

"In this connection it must be pointed out that the tendency of all modern cases on warranty is to enlarge the responsibility of the seller and restrict the application of the maxim of 'caveat

emptor.' 46 Am. Jur., Sales, section 339, page 522; 77 C. J. S., Sales, section 315, page 1160."

It is evident an implied warranty of fitness and suitability for intended use was by law woven into the fabric of the transaction here involved.

▆▆▆ The trial court found there existed an implied warranty of fitness and suitability running from each defendant to plaintiffs, which had been breached. Substantial evidence supports this finding.

VII. But the foregoing is not alone enough to hold defendants liable.

The relevant part of section 554.50, Code 1962, provides: "* * * if, after acceptance of the goods, the buyer fails to give notice to the seller of the breach of any promise or warranty within a reasonable time after the buyer knows, or ought to know, of such breach the seller shall not be liable therefor."

▆▆▆ A buyer's right of action against the manufacturer, seller or bailor is not necessarily destroyed by acceptance or retention of the thing purchased. It may be accepted or kept and an action later brought for breach of warranty. Section 554.70, Code 1962, and Reed v. Bunger, 255 Iowa 322, 336, 122 N.W.2d 290.

▆▆▆▆ In Morris Plan Leasing Co. v. Bingham Feed and Grain Co., supra, loc. cit., 259 Iowa 422, 143 N.W.2d 415, this court said: "It certainly is not the rule that one who purchases with an implied warranty a unit similar to that involved, or other article the real character and quality of which can be determined only by a test of actual, practical use, must lose the benefit of his warranty because he fails to discover concealed or latent defects until in the ordinary course of business he puts the thing purchased to the use for which it is designed and sold. Indeed, we think the duty of inspection upon receipt of an article purchased is applicable only to cases where the buyer undertakes to rescind his order or exercise the right to return the property to the seller. Loxtercamp v. Lininger Implement Co., 147 Iowa 29, 35, 125 N.W. 830, 833, 33 L. R. A., N. S., 501."

▆▆▆ Here, as in the Morris Plan Leasing Co. case, supra,

plaintiffs continued to use the equipment while attempts were being made to remedy the defects.

The automatic coin operated dry cleaning unit here concerned was an intricate, complicated piece of machinery and its faults, which later became evident, were latent.

At this point some repetition of the factual situation is unavoidable.

Installation was completed April 7, 1962. Trouble started at once.

Plaintiffs repeatedly, by phone calls and otherwise, gave notice to Holiday of the problems encountered.

Sometime in May or June a Speed Queen representative called at the Algona plant, studied the situation and attempted to correct the then known defects.

November 15, plaintiffs wrote Speed Queen: "The last three weeks our machines have developed a bad habit, and it using (sic) about fourteen dollars worth of perk a day." This letter was referred to Holiday.

Then December 1, Holiday was notified by mail the machine was not working properly and demand for damages was made.

April 29, 1963, an attorney, acting on behalf of plaintiffs, wrote Holiday making demand for return of the purchase price and reimbursement for expenses incurred by reason of breach of express and implied warranties.

By October plaintiffs had encountered so many problems with attendant expense, delay and losses they abandoned usage of the machinery.

Notice of breach of any promise or warranty must be given within a reasonable time. Section 554.50, Code 1962.

Ordinarily this notice must be more than a mere complaint. It shall directly or inferentially inform the other party or parties the buyer or bailee claims breach of warranty and damages are demanded. Normally it is essential such notification be given within a reasonable period of time after awareness of the breach.

What is reasonable both as to form and time of notice is determinable according to the factual situation presented in each individual case. See Truesdale v. Friedman, 270 Minn. 109, 132

874

N.W.2d .854, 862, and annotations, 41 A. L. R.2d 813 and 53 A. L. R.2d 271.

 Where all evidence is such as to compel reasonable men to reach only one conclusion as to sufficiency of notice, the question presented is one of law to be resolved by the court. Adler v. United States (8 Cir.), 270 F.2d 715, 719.

Usually, however, the question is one of fact. Adler v. United States, supra, and Salecki v. Coca-Cola Bottling Company of Hartford, 20 Conn. Sup. 143, 127 A.2d 497, 498.

The evidence discloses plaintiffs attempted to make effective use of the dry cleaner for about eleven months after their letter to Speed Queen, and approximately six months following the last communication directed to Holiday.

While the authorities appear to be in some degree of conflict as to the matter of timeliness of notice, we held in Morris Plan Leasing Co. v. Bingham Feed and Grain Co., supra, continued good faith efforts to utilize equipment with intermittent remedial efforts made over a period of more than one year by the bailor would not constitute failure to give timely notice. See also Comet Industries, Inc. v. Best Plastic Container Corp., 222 F. Supp. 723, 728.

The written notices given, and knowledge gained by defendant Holiday as a result of service calls made, repel any inference of waiver on the part of plaintiffs. In fact Holiday was thereby informed, both directly and by implication, the warranties by it, express and implied, had not only been breached but that plaintiffs were demanding damages.

The trial court found both defendants received timely actual and written notice of the faulty conditions and failure of the machines to properly operate.

. We agree as to Holiday but disagree as to defendant Speed Queen.

It is evident Speed Queen's only notification of defect came as a result of one service call in May or June 1962, and a complaint letter the following November.

·· This manufacturer was never, directly or by inference, advised. of any claimed breach of implied warranty or that plaintiffs were .looking to it for compensation or reimbursement.

In fact the record discloses Speed Queen was first so informed August 26, 1964, when brought into the case as a defendant.

That is not sufficient notification upon which to hold defendant manufacturer liable to plaintiffs for any breach of warranty. On this point additional citation of authority is unnecessary.

VIII. Plaintiffs were awarded $7506.46, actual cost of the machine, and it is contended no competent evidence was presented upon which the trial court could allow damages in that amount.

Over persistent, timely objections by counsel for Holiday and Speed Queen. plaintiff Sande testified as follows:

"Q. Mr. Sande, in your opinion what is the present value of this machine to you for the purpose of dry cleaning? A. None.
"* * *

"A. It is worth nothing to us.

"Q. Would that opinion be true as to the date of April of 1963?
"* * *

"A. I would say it was of no value to us then.

"Q. What is your reason for that? A. Just the machine would not operate properly; they would not—we were unable to use them at all to any good advantage."

And plaintiff Dailey, with similar objections voiced, gave this value testimony:

"Q. Mr. Dailey, what value in your opinion, based on the expense you have had with these machines, what is their present value?
"* * *

"Q. What value in your opinion were they to you in April of 1963?
"* * *

"Q. What in your opinion was the value as of that time? A. Well, just wouldn't work; no value as long as they wouldn't work.

"Q. Is that your same opinion shortly after they were purchased until the present time? A. Yes."

It is evident Sande said in substance that at time of trial,

and in April 1963, the machine had *no value to him and Dailey for dry cleaning purposes.*

Also, Dailey's testimony discloses nothing more than that the machine had no value *as long as it did not work.*

On motion for judgment notwithstanding the verdict defendants asserted error by the trial court in admitting this evidence over objections made, and allowing damages in the sum above stated.

The relevant portions of section 554.70, Code 1962, provide:

"1. Where there is a breach of warranty by the seller, the buyer may, at his election:

"* * *

"b. Accept or keep the goods and maintain an action against the seller for damages for the breach of warranty.

"* * *

"6. The measure of damages for breach of warranty is the loss directly and naturally resulting, in the ordinary course of events, from the breach of warranty.

"7. In the case of breach of warranty of quality, such loss, in the absence of special circumstances showing proximate damage of a greater amount, is the difference between the value of the goods at the time of delivery to the buyer and the value they would have had if they had answered to the warranty."

The measure of damages for breach of warranty is ordinarily the difference between value of the goods as they were and value as they would have been had they answered to the warranty. Drager v. Carlson Hybrid Corn Co., Inc., 244 Iowa 78, 86, 87, 56 N.W.2d 18.

As best we can determine, that is the basis upon which plaintiffs attempted to establish their damage.

Stated otherwise plaintiffs' approach indicates their measure of damage would be the difference between value of the dry cleaner if it had been as warranted and its actual value. This means difference in fair and reasonable value, not difference in value to some one person or for any one use.

It is not limited to usage for dry cleaning purposes alone or by the fact the machine did not work satisfactorily.

In support hereof see Boeing Airplane Co. v. O'Malley (8

Cir.), 329 F.2d 585, 598; Turner v. Kunde, 256 Iowa 835, 842, 843, 128 N.W.2d 196; Kelly v. Emary, 242 Iowa 683, 690, 45 N.W.2d 866; Chariton Plumbing & Heating Co. v. Lester, 202 Iowa 475, 477, 210 N.W. 584; Mendenhall v. Kallem, 191 Iowa 987, 991, 183 N.W. 422; 77 C. J. S., Sales, section 376, page 1321; 46 Am. Jur., Sales, section 738, page 863; and Williston on Sales, Revised Ed., section 613.

The burden was on plaintiffs to prove damages, if any, by good and competent evidence. This they failed to do.

It follows the trial court erred in awarding $7506.46 to plaintiffs.

IX. At the close of plaintiffs' testimony defendant Speed Queen moved for directed verdict on various grounds, including absence of proper and timely notice of any breach of warranty. It was renewed after presentation of testimony by defendant Speed Queen and at close of all the evidence. These motions were successively overruled by the trial court.

For reasons above stated this was error requiring a reversal as to defendant Speed Queen.

X. In connection with the matter of the judgment against defendant Holiday, an entirely different situation is presented.

This defendant's timely motion for new trial based in part upon erroneous proof and award of damages was overruled.

The problem presented is limited to one issue alone—a proper determination of damages to be paid by defendant Holiday to these plaintiffs.

We have previously held a case may be remanded for determination of a single issue. In Feldhahn v. Van DeVenter, 253 Iowa 1194, 115 N.W.2d 862, this court, in dealing with inadequacy of a verdict, reversed and remanded for further proceedings on that sole issue.

To remand the case at hand for another complete trial would be an injustice to plaintiffs and a source of needless cost to defendant Holiday.

The ends of justice will far better be served by limiting the issue determinable upon remand to the matter of damages. See McCarville v. Ream. 247 Iowa 1, 10–14, 72 N.W.2d 476.

878

XI. This case is reversed and remanded: (1) For entry of order sustaining the motion for directed verdict by defendant Speed Queen, a Division of McGraw-Edison Company, and (2) for entry of order setting aside the judgment heretofore entered by the trial court, the taking of testimony limited to the matter of damages, if any, owing to plaintiffs by defendant Holiday Distributing Corporation, and for judgment accordingly.

Reversed and remanded for further proceedings consistent with this opinion.

All JUSTICES concur.