KLPR TV, INC., and Coronado Corporation, Appellees,

v.

VISUAL ELECTRONICS CORPORATION, Appellant.

NOARK BROADCASTING, INC., Appellee,

v.

L. J. (Jack) BEASLEY et al., Appellees.

No. 71-1514.

United States Court of Appeals, Eighth Circuit.

Submitted April 10, 1972.

Decided Aug. 10, 1972.

C. Wayne Harris, Fort Smith, Ark., for appellant.

E. J. Ball, Fayetteville, Ark., for appellees.

Before VAN OOSTERHOUT, Senior Circuit Judge, and MEHAFFY and STEPHENSON, Circuit Judges.

VAN OOSTERHOUT, Senior Circuit Judge.

This is an appeal by Visual Electronics Corporation [1] (Visual) from final judgment denying recovery of unpaid balance on a lease purchase agreement of operating equipment for a UHF–TV station against KLPR TV, Inc., (KLPR), Coronado Corporation, L. M. Beasley, Omer Thompson, Noark Broadcasting, Inc., (hereinafter referred to as Noark), and Noark Investments, Inc.

This case was tried to Judge Miller without a jury. Jurisdiction based upon diversity of citizenship and the jurisdictional amount is established.

The complex pleadings and the issues as well as much of the factual detail are set out in Judge Miller's opinion reported at 327 F.Supp. 315.

The origin of this litigation was a suit commenced by KLPR for a declaratory judgment as to its rights and liabilities arising out of the transactions here involved. All parties heretofore named were ultimately made parties to the suit. With the proper object of minimizing the confusion, the case without objection was properly tried as an action by Visual for payments due it on its counterclaim with counterclaims and asserted defenses filed by KLPR, Coronado Corporation, Beasley, Thompson, Noark and Noark Investments, Inc.

KLPR and Coronado are Oklahoma corporations controlled by Beasley and Thompson. KLPR was organized and licensed to operate a television station at Oklahoma City. Coronado, Beasley and Thompson have by written contracts assumed liability on the lease purchase contract entered into by KLPR and Visual and their rights and liabilities are dependent upon those of KLPR. For simplification, we will generally refer to such parties jointly as KLPR.

KLPR with the consent of Visual but with reservation of all rights against the KLPR group assigned its interest under the lease purchase agreement to Noark, an Arkansas Corporation organized to operate a television station at Fayetteville, Arkansas.

Noark Investments, Inc., an Arkansas corporation with the same stockholders as Noark, received an assignment of Noark's rights in the lease. The issue of Noark Investments, Inc.'s liability is not reached unless Noark is found to be indebted to Visual.

KLPR after soliciting and considering bids from various suppliers on August 31, 1965, entered into a written lease agreement with Visual covering operating equipment for a TV station, reciting a consideration of $343,125.00, due in sixty monthly installments of $5,718.75. The lease contains an option to purchase the equipment at the expiration of the lease for $30,500.00. KLPR received a construction permit for its station from FCC on February 6, 1966, and started broadcasting with the leased equipment in June 1966.

KLPR became delinquent in its rental payments. On June 14, 1967, KLPR and Visual entered into a new lease agreement which among other things reduced the monthly payments due up to April 15, 1969, to $2,660.00. The payment schedule and other details of the new lease contract are set out at p. 319 of 327 F.Supp. Coronado, Beasley and Thompson guaranteed the payments due under the June 14, 1967, lease and Coronado exercised the option contained therein for the purchase of the leased equipment.

KLPR made substantial payments on the revised lease. Its president testified that payments on the lease continued "as long as we had money in the bank."

---

1. Visual has filed a petition for arrangements in the Southern District of New York under Chapter XI of the Bankruptcy Act and has been authorized by the Referee in Bankruptcy to continue this litigation.

KLPR discontinued operating its station early in 1968. KLPR assigned in writing its interest in the lease and the leased property to Noark with Noark assuming the obligations of the lease and agreeing to hold KLPR and its guarantors harmless on the lease obligations. KLPR also as part of the consideration for the transaction turned over to Noark some property items owned by· it not covered by the lease.

Judge Miller's statement of the issues before him is set out at p. 321 of 327 F. Supp. He entered final judgment on March 25, 1971, resolving such issues as follows:

"It is Ordered and Adjudged:

(1) That the cross-complaint of the defendant Visual Electronics Corporation against the plaintiffs, KLPR TV and Coronado Corporation, and the defendant Noark Broadcasting, Inc., be and it is dismissed, and that plaintiffs and Noark Broadcasting, Inc., recover from defendant and Visual Electronics Corporation their costs expended herein by reason of said cross-complaint;

(2) That the third-party complaint of Visual Electronics Corporation against third-party defendants, L. M. (Jack) Beasley, Omer Thompson, and Noark Investments, Inc., be and it is dismissed, and that said third-party defendants recover from Visual Electronics Corporation their costs herein expended by reason of said third-party complaint;

(3) That the claim of the plaintiffs, KLPR TV, Inc., and Coronado Corporation for damages against Visual Electronics Corporation be and it is dismissed, without costs; and

(4) That the defendant Noark Broadcasting, Inc., on its claim for damages herein shall have and recover of and from the defendant Visual Electronics Corporation the sum of $179,260.00, together with its costs expended on said claim."

Visual's timely appeal is from such final judgment. No cross-appeal has been taken. KLPR has filed no brief with us.

Visual presents three issues upon which it bases its right to a reversal, to wit:

1. Visual is entitled to receive the payments called for in its lease for goods sold, delivered and accepted as against all other parties to this action.

2. Findings of fact upon which the judgment is based are clearly erroneous.

3. Damages awarded to Noark are not based upon a proper measure of damages and are not supported by substantial evidence.

Preliminary to reaching Visual's contentions, we note that Visual is not here raising the issue which it urged in the trial court that the involved lease is not governed by the Uniform Commercial Code adopted in Arkansas. Upon this issue Judge Miller, citing Sawyer v. Pioneer Leasing Corp., 244 Ark. 943, 428 S.W.2d 46 and other cases, held that the lease transaction was at least analogous to a sale and that the Arkansas Uniform Commercial Code statutes applied to the lease transaction. We agree with such determination.

■ We shall first consider whether KLPR has any express or implied warranty defense to Visual's claim. We hold that KLPR lost any express or implied warranty rights it might have possessed by accepting the goods and by failing to give Visual notification of breach of warranty within a reasonable time as required by Arkansas Stat.Ann. §§ 85–2–607(3) (a) and 85–2–714(2). See Hudspeth Motors, Inc. v. Wilkinson, 238 Ark., 410, 382 S.W.2d 191, 192; Green Chevrolet Co. v. Kemp, 241 Ark. 62, 406 S.W.2d 142, 144. The trial court made no express finding that KLPR gave notice of the breach as required by § 85–2–607. Some complaints were made about particular parts of the leased equipment and adjustments were attempted with respect thereto. The goods were all delivered early in 1966 under the 1965 lease. After KLPR had used the equipment for over a year the

June 14, 1967, novation contract was entered into which among other things expressly provides "lessee accepts possession and good working order of said equipment and any and all prior lease agreements by the parties hereto are hereby revoked and superseded by this instrument."

KLPR continued to make the required payments until it ran out of money in 1968. When sued for breach of payments in 1968, it raised no warranty defense and made the delinquent payments. In its declaratory judgment action which initiated this litigation, no breach of warranty was claimed. KLPR has no valid defense to its obligations under the lease. The court erred in dismissing the complaint against KLPR, Coronado Corporation, Beasley and Thompson.

Noark in acquiring the assignment of the lease assumed primary liability for the lease payments. If Noark is entitled to an offset against Visual's claim, liability of KLPR and its guarantors must be reduced to the extent of such offset.

■ Noark argues that it received from Visual express and implied warranties as to suitability of its equipment for its intended use. It contends that by virtue of the assignment of the lease it acquired the express and implied warranties possessed by KLPR. Such claim lacks merit as we have heretofore held that KLPR held no warranty rights against Visual at the time of the assignment.

Noark additionally claims that Visual made express and implied warranties to it on which it relied. On the express warranty issue, the trial court found:

> "On the question of whether a warranty existed, the evidence is clear that Noark was the beneficiary of an express warranty that the equipment would be put in 'first class' condition and would produce a quality television picture. As had been stated, the testimony is uncontradicted that Visual's agent represented that the equipment would be placed in 'first class' condition and would be made to produce a quality picture. The statement was made before the assignment was executed. Noark relied upon the statement as Visual intended it to. Noark was entitled to rely upon such statement, and it amounts to a warranty that the goods were fit for the intended use. . . . " 327 F.Supp. 315, 324.

■ The evidence on express warranty made to Noark is conflicting. The trial court's findings must be accepted unless clearly erroneous. On review, the evidence must be viewed in the light most favorable to the prevailing party. We hold that the court's finding of express warranty by Visual to Noark is supported by substantial evidence and is not clearly erroneous. It is undisputed that the negotiations between KLPR and Noark for assignment of the lease broke down and that such negotiations were revived only after Visual's treasurer Phillips came to Fayetteville and entered into negotiations with Noark officials. Noark's evidence supports a warranty finding. Wilson, who represented Visual, was not offered as a witness to controvert Noark's version of the agreement made.

■ We agree with the trial court that the parol evidence rule creates no obstacle to the establishment of the warranty. No written contract existed between Noark and Visual.

While the lease assignment was made by KLPR, Visual had a substantial interest in the transaction by reason of its interest in having payments on the lease resumed. It also retained a security interest in the leased property until the required payments were made. It was the manufacturer or distributor of the leased property.

Our approval of the trial court's determination that an express warranty existed makes it unnecessary to determine the more doubtful question of whether implied warranty arose out of Visual's activities in the transfer of the property. The express and implied war-

ranties urged cover substantially the same ground.

█ Judge Miller found Noark had given Visual proper notice of breach of warranty. Noark commenced broadcasting on February 8, 1969. Judge Miller found Noark made constant complaints about the equipment failing to comply with the warranty and that within two months after operations commenced it ceased making payments on the lease and informed Visual that no further payments would be made until the equipment was put in such condition that it would operate as warranted. On this issue the court states: "The court is convinced that Visual not only had reasonable notice but knew positively that the equipment was defective and would not produce a proper picture." We agree.

█ We now reach Visual's contention that proper legal standards were not used in computing the damages awarded and that the damages awarded are not supported by substantial evidence. We agree with the trial court that damages due Noark are governed by Arkansas Statutes §§ 85–2–714 and 715 quoted in the trial court's opinion.

The amount of unpaid rent due Visual on the lease contract at the time it was assigned to Noark was $262,041.00, which obligation was assumed by Noark. In addition, Noark contracted to pay Visual $54,450.00 for financing and converting the leased equipment and additions thereto. In a pretrial order dated February 22, 1971, the court determined that Visual was entitled to recover the balance due it on the lease, stating:

> "KLPR–TV, Inc. and defendant Noark Broadcasting, Inc., are in default, and that the plaintiff Coronado Corporation and third-party defendants L. M. Jack) Beasley and Omar Thompson are absolutely liable to the defendant Visual Electronics Corporation for all damages or loss occasioned by the default of KLPR–TV, Inc., and NOARK Broadcasting, Inc. . . ."

The court then notes that Noark asserts damages by reason of breach of warranty in the amount of $55,000.00 and that KLPR also relies on breach of warranty offset and states that final judgment should not be entered until the offsets, if any, are determined and that these should be determined by trial. In an amended pleading, Noark prays for recovery of $235,000.00 against Visual to the extent Visual establishes any claim of right to recover against it. Nowhere in the pleadings do we find any claim based on incidental or consequential damages.

█ The court after trial on the issue of damages, on the basis of the difference at the time and place of acceptance between the value of the goods accepted and the value which they would have had as warranted, awarded Noark $23,940.00 which was the amount of payments it had made on the lease. Visual was allowed nothing by way of recovery on the lease and no mention is made of the pretrial determination. No express explanation is made on the basis of the determination but it would appear from the opinion as a whole that the trial court based its determination on a finding that the leased goods had no value. It seems clear to us that such a finding of no value is clearly erroneous. Under the controlling statute, the value should be determined as of the time and place of acceptance. Language in the court's opinion indicates that reliance is placed on the value at the time of trial, which was nearly three years after delivery of the equipment. Moreover, the value to be considered is the reasonable market value of the goods delivered, not the value of the goods to a particular purchaser or for a particular purpose. See Dailey v. Holiday Distributing Corp., 260 Iowa, 859, 151 N.W.2d 477, 489.

The trial court found Stamps, who represented Noark, was experienced in the operation of television. Stamps prior to the purchase had examined the equipment in Oklahoma and had been advised of KLPR's experience with the equipment by Beasley. He initially rejected a deal because the transmitter could not be used without considerable

modification. The fact that Stamps went ahead with the deal is strong evidence that the goods involved were not worthless.

Noark made no effort to rescind its purchase contract and it continued to use the equipment and was still using it at the time of the trial. There is no substantial evidentiary support for the court's determination that the leased property was worthless at the time of its acceptance.

The trial court in addition to denying Visual any recovery on the $262,041.00 balance due on its lease and the $54,450.00 advanced for cost of converting the transmitter and other equipment, and allowing Noark judgment for recovery of $29,260.00 which it had paid on rent due under the lease, awarded Noark $150,000.00 consequential damages. The record on the consequential claim of damage is extremely unsatisfactory. A careful search of the pleadings contained in the record before us fails to indicate that Noark at any time made any claim for consequential damages. The court did during the course of the trial state that the pleadings would be considered amended to conform to the evidence. We feel that consideration of a large claim of this size should be supported by an appropriate pleading setting out the basis of the claim.

The judgment of consequential damages appears to be largely based on financial statements showing that Noark operated at a substantial loss, particularly an April 1970 statement reflecting an accumulated loss of $247,188.00. The trial court recognized that a loss could be proximately caused by many other things than faulty equipment. The court, without any adequate explanation or finding, determined that Noark suffered consequential damages in the amount of $150,000.00. Moreover, such judgment appears to be based in part on delay in furnishing equipment in time to permit the station to open prior to the 1968 election and thus obtain political advertising. We find nothing in the record to support a finding that Visual warranted or guaranteed that the equipment would be in operating order prior to the election, and we discover no finding to that effect in the trial court's opinion.

By reason of lack of appropriate pleadings and findings, we are unable to determine the period covered by the consequential damage award. A party is required to take reasonable steps to minimize damages and under such principle, Noark cannot continue to use rejected equipment indefinitely and build up consequential damages thereby. We find no substantial evidentiary support for the award of $150,000.00 for consequential damages.

For the reasons above stated, the damages awarded Noark appear to be induced by an erroneous view of the law, and the findings as to the amount of damages are not supported by substantial evidence. Visual is entitled to a new trial on the damage issue with respect to Noark. Prior to re-trial Noark should be required to file an amended pleading clearly stating the damages it claims and the basis of such claim.

There are indications in the record that Noark assigned its contract interest to Noark Investments, Inc., but the record fails to show the nature of the assignment. The court made no determination as to the nature and extent of the rights and liabilities of Noark Investments, Inc., with respect to this controversy and such issues remain open for adjudication upon re-trial.

By reason of the complexity of this litigation, we deem it appropriate to summarize our holdings:

1. The trial court awarded no money judgment in favor of or against Visual with respect to KLPR and its guarantors, Coronado Corporation, Beasley and Thompson. We hold that KLPR by the terms of the novation contract of June 14, 1967, waived and relinquished any express or implied warranty that it may have originally held. KLPR and its guarantors by assignment of the lease to Noark secured an assumption of pay-

ments due from Noark and are entitled to the benefit of any credit upon the lease payments that Noark is able to establish up to the extent of any unpaid balance due from KLPR to Visual on the lease. Visual is entitled to judgment for the unpaid balance due on the lease to the extent that such balance exceeds offsets established by Noark.

2. The trial court's determination that Visual expressly warranted the leased equipment to Noark, and that Noark gave Visual timely and adequate notice of breach of warranty is affirmed. The judgment is reversed and remanded for a new trial on the issue of damages, if any, due Noark from Visual with any award made to be offset against the amount due Visual on the lease contract.

3. No appeal has been taken from paragraph (3) of the court's order dismissing the claim of KLPR against Visual for cost of equipment it gave Noark to promote the assignment of the lease and consequently such portion of the judgment remains in effect.

Affirmed in part, reversed in part, and remanded for new trial on the issue of Noark's claim for damages.